## MOSES and others *vs.* MEAD and others.

In executed contracts for the sale· of personal property, where there is neither fraud nor express warranty, the purchaser takes the property at his own risk, as to its quality and condition.

The case of a sale by sample, where a warranty is allowed to be implied, that the bulk .of the article corresponds in quality with the sample exhibited, forms a well established exception to the general rule. *Per* BRONSON, *C. J.*

Where *provisions* are sold as merchandize, (and not for immediate consumption by the purchaser,) there is no implied warranty of soundness.

*It seems,* that where provisions are sold for *domestic use,* the law presumes that the seller is acquainted with their quality, and he. is liable to the purchaser if they turn out to be unwholesome. *Per* BRONSON, C. J.

ERROR to the superior court of the city of New-York. The plaintiffs in error sued the defendants in error in the court below, and declared in assumpsit upon a warranty on the sale of 194 barrels of mess beef, that the same was good, sound, merchantable and wholesome mess beef; whereas the same was unsound, sour, tainted, &c. On the trial the jury found a special verdict as follows: On the 9th of August, 1843, the plaintiffs, being merchants and dealers in provisions in the city of New-York, bought of the defendants, who were wholesale grocers and provision merchants in the same city, 194 barrels of mess beef, and paid eight dollars per barrel, that being the market price for good, sound, wholesome mess beef. The beef had been inspected by a New-York inspector in June previous, and branded "mess beef," and the inspector's bill was shown to the plaintiffs at the time of the sale. The plaintiffs examined one barrel of the beef, and might have examined more if they had chosen to do so. The beef was delivered on the day of the sale, and the purchase price was paid the next day. Neither of the parties knew that the beef was unsound. There was no express warranty by the defendants; nor was there any express agreement by the plaintiffs to take the risk of soundness: but the beef was bought and sold at the price of, and believing it to be, good, sound, sweet and wholesome mess beef. Beef is an article of provisions used only for food

for mankind. This beef was bought by the plaintiffs as pro
vision merchants—not for the consumption of their own fami
lies—but to be sold to their customers in the usual course of
their business. The beef was in fact unsound, sour, tainted,
and unwholesome as food for mankind; by reason whereof the
plaintiffs sustained damages to $400. The jury then referred
it to the court to say whether they were authorized to imply or find
a warranty, &c. Upon this special verdict the court below
gave judgment for the defendants; and the plaintiffs now bring
error.

*H. P. Hastings*, for the plaintiffs in error. The material
question in this case is whether the law *implies* a warranty upon
the sale of provisions. In *Van Bracklin* v. *Fonda*, (12 *John.
R.* 468,) where the defendant had sold the plaintiff a quarter
of beef as good and sound, which turned out to be bad and un-
wholesome, there was no *scienter* in the declaration, though
the case was such that an action for deceit would have lain.
It was however treated as an action on a warranty, and a re-
covery by the plaintiff was sustained. The doctrine laid down
by Blackstone (3 *Com.* 166,) that "in contracts for provisions
it is always implied that they are wholesome, and if they
be not," the seller is responsible, is there referred to with appro-
bation by this court. Chancellor Kent (2 *Kent's Com.* 479,
*note b.*) speaks of the liability of the seller in the case of a sale
of unsound provisions as an *implied warranty*, and refers
to *Van Bracklin* v. *Fonda.* In *Hart* v. *Wright*, (17 *Wend.* 267,)
the late Mr. Justice Cowen said that there were certain exceptions
to the rule that a sound price did not raise a warranty, one
of which he said was *the case of the sale of provisions to be
used as food for mankind.* This, he added, *rests on a regard
to the public health*, and he referred to *Van Bracklin* v. *Fonda*
with approbation; and it is evident that if the flour, the sale of
which was the subject of that suit, had been sold for domestic
use, the warranty of soundness would have been held to attach.
When this case of *Hart* v. *Wright* came before the court for
the correction of errors, (18 *Wend.* 449,) Mr. Senator Tracy

met the authority of Blackstone and of this court in the case of *Van Bracklin* v. *Fonda*, by saying that formerly, as long ago as the time of Popham, C. J., (*Dyer*, 75,) the rule was general that no warranty was by law annexed to the sale of " victuals" or of any other articles. In *Bailey* v. *Nichols*, (2 *Root*, 407,) in the superior court of Connecticut, the rule for which we contend was distinctly held, and though in a subsequent case it was held that there was not, generally, an implied warranty of good quality attached to the sale of chattels, the sale of provisions was not adverted to, and the case in Root was not noticed. In *Osgood* v. *Lewis*, (2 *Harr. & Gill*, 495,) the doctrine laid down by Blackstone and approved by this court is expressly affirmed.

The selling of unwholesome provisions is indictable even in the case of a general dealer. (*Roscoe's Cr. Ev.* 340, 345; 4 *Bl. Com.* 162; *Roswel* v. *Vaughan, Cro. Jac.* 196.) In the case last cited, it is said that the seller of unwholesome provisions is responsible without warranty, " because it is against the commonwealth." Selling without warranty in the sense of this case means without *express* warranty, for there could not be a sale without an implied warranty where the law itself makes the implication. In an action for selling unwholesome provisions, if the action is not upon an implied contract of warranty, it must be for *deceit*, and the deceit must be alleged and *proved;* and thus the distinction in favor of the purchaser of provisions will be lost; for where there is deceit in the sale of any chattel, an action lies. There is still an older authority. In *Keilwey's Rep.* 91, (*temp. Henry 7th,*) it is laid down that an action on the case lies against the seller of corrupt provisions *without warranty and without knowledge.* See also *Petersdorf's Abr.* 372, *note* ‡; *Chitty on Contracts, 5th Am. ed.,* 450, 452, *note;* and *Marshall* v. *Peck,* (1 *Dana's Rep.* 612;) 1 *Cowen's Treat. 2d ed.* 318; *Waring* v. *Mason,* (18 *Wend.* 439,) *per Paige, senator*, where the principle contended for will be found to be countenanced. If it be conceded that upon the sale of unwholesome provisions without actual fraud or an express warranty, an action lies, it cannot with any show of reason be insisted that the action

should be for an *implied deceit.* Where fraud is charged, it must be proved; but that is not always the case where a warranty is averred. There are many cases of implied warranty, as in actions upon policies of insurance that the vessel is seaworthy, upon the sale of chattels that the vendor is the owner, upon the exchange of lands that each party is seized, and upon the transfer of commercial paper that it is genuine. The good sense of the rule is, that where the nature of the case requires it, the law annexes a warranty. (*Bacon's Abr. Warranty, E.; Johnson* v. *Titus,* 2 *Hill,* 606.) There is another exception to the rule of *caveat emptor,* now well established in this court in the case of a sale by sample. *Boorman* v. *Johnson,* (12 *Wend,* 574,) and Nelson, C. J. in *Gallagher* v. *Waring,* (9 *id.* 27,) hold that on a sale of cotton without examination there is an implied warranty of quality, whether the sale was by sample or not. When this case came before the court for the correction of errors, (18 *id.* 425,) the chancellor did not deny the soundness of the rule laid down by the chief justice; and Senator Paige, though he repudiated the idea of a sale by sample implying a warranty, expressly declared that an implied warranty attached where there was no opportunity for inspection or examination, or where the article is distant from the place of making the contract. It is submitted that an examination of all the cases upon this subject from that reported by Dyer to the present time, will show that the maxim *caveat emptor* has never been held applicable where the article purchased was not present at the sale, and was not seen by the buyer before the purchase.

There is no ground upon principle or authority for maintaining a distinction in respect to the liability of the vendor between a sale by wholesale to a dealer to sell again and one in a smaller parcel for consumption. The policy of the rule requires that unwholesome provisions should be kept out of the market—that such articles should not be made the subject of traffic; for whether the sale is to a consumer or to a dealer, the ultimate object of the transaction is the supplying of food for domestic consumption.

The inspection is not conclusive upon the plaintiff, and does not exempt the defendant from liability. (*Clintsman* v. *Northrop*, 8 *Cowen*, 45; *Williams* v. *Merle*, 11 *Wend.* 80.) On the contrary it is insisted that the fact of legal provision being made to protect community against unsound provisions affords a strong argument to shew that a warranty of quality is annexed to sales of such property. Every contract ought to be so construed as not to violate the spirit or policy of the general laws of the state.

*A. P. Man*, for the defendants in error. The jury have found that there was no express warranty. No warranty can therefore be held to result from the article being described as *mess* beef. They have also held that there was no fraud. The sale was an executed and not an executory one. Certain rules, therefore, which apply to the latter class of contracts, have no place here. The general rule upon this subject is, that there must be an express warranty or fraud. (*Oneida Man. Soc.* v. *Lawrence*, 4 *Cowen*, 440; *Seixas* v. *Woods*, 2 *Caines*, 48; *Hart* v. *Wright*, 17 *Wend.* 267; *Wright* v. *Hart*, 18 *id.* 449, 454; *Swett* v. *Colgate*, 20 *John. R.* 196; *Holden* v. *Dakin*, 4 *id.* 421; *Welsh* v. *Carter*, 1 *Wend.* 185; *Thompson* v. *Ashton*, 14 *John. R.* 316.) The case of *Gardiner* v. *Gray* (4 *Camp.* 144) sustains a distinction where the purchaser had no opportunity to examine the article; and it was there held that, under the circumstances, the purchaser had a right to expect a saleable article answering the description in the contract. The case of *Howard* v. *Hoey* in this court (23 *Wend.* 350) does not adopt that principle, but only determines that in the case of *executory* contracts, where no property passes at the time, a warranty is implied that the thing to be delivered shall be free from any remarkable defect. This does not touch the case before the court. So where there is deceit, the seller is always liable; but that is not pretended here.

The question in this case is whether, upon a sale of provisions by one dealer to another, where there is neither express warranty nor fraud. the vendor is responsible if the article turns out not

to be of good quality. We insist that the implied warranty attaches only where the purchase is made for consumption in the purchaser's own family, and not where he purchases to sell again; that in the latter case the transaction is governed by the same rules which apply to the sale of other personal property. The distinction suggested is of easy application; it is founded in reason and good sense, and is moreover sustained by authority. A large proportion of the property sold in market in the city of New-York consists of articles used for provisions; and where the sale is by wholesale, the vendor has no more opportunity of knowing their quality than the purchaser. The case of *Van Bracklin* v. *Fonda*, relied on on the other side, was an action for deceit. It was so expressly stated, and so it appeared upon the evidence. The court say that the verdict settles the fact, that "the defendant knew the animal to be diseased and did not communicate the fact to the plaintiff," and that the concealment of the fact was equivalent to a suggestion of a falsehood that she was sound. The court are also careful to say that "in the sale of provisions for *domestic use*, the vendor is bound to know that they are sound and wholesome at his peril." In 11 *Pick*. 484, the case was very similar to the present. The sale was of 100 lbs. beef, obviously for domestic use, and the *scienter* was distinctly averred. Blackstone, at the passage relied on by the plaintiffs, says, if provisions sold are not wholesome, an action *on the case* lies. The only authority cited by him is *Fitz. N. B.* 94. It is there said, in the text—"If a man bargain and sell unto another certain pipes of wine and warrants them to be good, &c. and they are corrupted, he shall have action upon the case against him." In a *note* it is said that "it seems that an action on the case lies without warranty; and so is 7 *H.* 4. 14."—"Note a diversity between selling corrupt wines for merchandize, for there an action on the case does not lie without warranty; otherwise if it be for a tavern or victualler, if it prejudice any. (*See* 9 *H.* 6. 49, *Accordant.*") In *Bacon's Abr. Inns and Innkeepers,* (*C.*) 2, it is said, "If an innkeeper sell corrupt wine or victuals, an action lies against him; also if his servant sell such corrupt wine or victuals, an

action on the case lies against the master, though he did not order the servant to sell it to any particular person ;" and for this is cited 9 *Hen.* 6, *pl.* 53, and *Roll. Abr.* 95. Since the note to *Kent's Com.* cited by the plaintiff's counsel, (2 *Kent's Com.* 280, *note b ;*) the rule is restricted to the sale of provisions "for domestic use ;" and in the case of *Wright* v. *Hart,* in the court of errors, the Chancellor at *p.* 454, and Senator Tracy at *p.* 464, confine the rule to the sale of provisions for family consumption. The same distinction is recognized in *Hilliard on Sales,* 230, § 23, and in *Osgood* v. *Lewis,* (2 *Harr. & Gill,* 519.) The authorities showing that an indictment will lie for selling unwholesome provisions confine the rule to cases where the sale is for direct consumption by the purchaser. A large proportion of the articles which are used principally for food are yet used in great quantities for other purposes, and a rule founded on a distinction between substances which sometimes are and those which never are used for other purposes than food, would not accord with good sense or the nature of things. In *Emerson* v. *Brigham,* (10 *Mass. R.* 197,) 25 barrels of beef were sold by one merchant to another, and proving unwholesome, the purchaser sued the seller for damages. The court held that the rule making the vendor of provisions responsible without fraud or express warranty was confined to cases where victuallers or the like sell provisions to their customers. In 3 *Monroe's (Ky.) Rep.* 85, where the rule insisted on was sought to be applied, the court said, "The law is otherwise as to provisions *sold as merchandize.*" In *La Neuville* v. *Nourse,* (3 *Camp.* 351,) in a sale of 10 dozen of wine, it was held that there was no implied warranty, and that the maxim *caveat emptor* applied. Judge Cowen's remark in *Hart* v. *Wright,* (17 *Wend.* 267,) is limited to cases where the provisions are sold for domestic use, and in *Cro. Jac.* referred to by the plaintiffs' counsel, the expression "victuals" could not refer to provisions when sold as merchandize. It is probable that in England, at the time when Blackstone wrote, the term *provisions* was not used as it is at present, to define large classes of property sold in market as merchandize. In *Howard* v. *Hoey,* (23 *Wend.* 350,) where the question

Moses v. Mead.

was as to the liability of the vendor of a quantity of bad ale,(an article used solely for the consumption of man,) the rule now insisted on was not even referred to, though if applicable to cases of sales by wholesale, it would have governed the case.

The idea that a warranty attaches to all sales where the purchaser has no opportunity to examine the article, has no application to this case, if such a rule exists in any case. In *Hart* v. *Wright*, (17 *Wend*. 262, 275,) the rule applies only to cases " where the examination at the time of the sale is, morally speaking, impracticable." In *Holden* v. *Dakin*, (4 *John. R.* 421,) the sale was of paints in kegs, and it was held that there was no warranty. In *Thompson* v. *Ashton*, (14 *John. R.* 316,) it was of crockery in close grates, and the decision was the same. In *Salisbury* v. *Stainer*, (19 *Wend.* 159,) it was of hemp put up in bales, and the same rule prevailed. In this case the sale was negotiated one day and the purchase price was paid the next. The purchaser took time, as we say, for examination.

*By the Court*, BRONSON, Ch. J. When there is neither fraud nor express warranty on the sale of a chattel, the buyer takes the risk of its quality and condition. No warranty of any kind can be implied from the fact that a sound price was paid. *Caveat emptor*, and not *caveat venditor*, is the rule of the common law; and that is our law. I speak of an executed, and not of an executory contract for the sale of goods. (*See Howard* v. *Hoey*, 23 *Wend.* 350.) Some of the English judges have lately shown a strong tendency towards the doctrines of the civil law in relation to sales, and have been disposed to imply warranties where none were actually made. This is the more remarkable for the reason that the common law judges at Westminster hall have not heretofore been disposed to think very highly of the civil law, except where it coincided with their own; and it has been thought a strong trait of British character, that nothing in the institutions of other countries is esteemed of much value, unless it be also common to the laws and customs of England. I do not regret to find that there are men in Great Britain who can look beyond the shores of that island : but I

feel no disposition to follow them in their new zeal for the civil law; for the reason that it is not our law, and the further reason, that our law in relation to sales is the best. The civil law implies a warranty where none was in fact made. The common law leaves men to make their own bargains. If the purchaser wants an undertaking that the goods are sound or merchantable, he asks for it; and then the vendor decides for himself whether he will make such a contract, or let it alone. Under the civil law it is not enough for the seller's protection that he deals honestly, and does not warrant the goods; but he must make an agreement that no agreement shall be implied against him. When charged with a warranty, he cannot safely answer, prove it; nor will it be enough for him to show that no warranty was in fact made: he must go further, and prove an agreement to be exempt from the consequences of a contract which he did not make.

The last attempt with us to substitute the civil, for the common law rule, was made in relation to a sale of flour, which proved to be bad. The attempt failed, both in this court and the court of errors. (*Hart* v. *Wright*, 17 *Wend.* 267, *and* 18 *id.* 449.) We have made one inroad upon the common law rule, and allowed a warranty to be implied on a sale by sample, that the bulk of the article corresponds in quality with the sample exhibited. (*Waring* v. *Mason*, 18 *Wend.* 425.) This exception to the general rule, although now firmly established, stands upon no principle. If the purchaser wants such a warranty, he should ask for it; and then the vendor will have the opportunity of saying whether he will consent to make such a contract or not. The law now makes it for him without his consent: and he can only get rid of that result by taking the precaution to agree at the time of the sale, that no contract which he does not make shall afterwards be implied against him. It would, I think, have been better had the maxim of *caveat emptor* been left unbroken.

We are referred to the authority of Blackstone for another exception to the general rule, and it is insisted that on a sale of *provisions*, there is an implied warranty that they are whole-

some. 3 *Black. Com.* 164–5.) The language of the commentator leaves it somewhat doubtful whether his mind was not upon a *deceit* in the sale, which stands on a different footing from a warranty. If he intended to affirm that the law always implies a warranty of soundness on the sale of provisions, the remark is without any support in the English adjudications. There is a *dictum* of Tanfield, C. B. and Altham, Baron, in *Roswel* v. *Vaughan,* (*Cro. Jac.* 196,) that "if a man sell victuals which is corrupt, without warranty, an action lies, because it is against the commonwealth." But they were evidently speaking of a sale of food for man's use, knowing it to be unwholesome, which is an indictable offence. The dictum of Blackstone has been directly overruled in Massachusetts. (*Emerson* v. *Brigham,* 10 *Mass. R.* 197.) The case of *Bailey* v. *Nichols,* (2 *Root,* 407,) was not put upon the ground that it was a sale of provisions : and besides, the case has been overruled. (*Dean* v. *Mason,* 4 *Conn. R.* 428.) The doctrine of Blackstone, with a very important qualification, was approved by the judge who prepared the opinion in *Van Bracklin* v. *Fonda,* (12 *John.* 468,) but that was plainly a case of fraud. The jury found that the beef was unsound and unwholesome, and that the defendant—the seller—*knew* the animal to be diseased. The case of *Hart* v. *Wright,* (17 *Wend.* 267, *and* 18 *id.* 449,) arose on a sale of provisions; and one member of the court of errors was for implying a warranty of soundness; but that opinion did not prevail. The only distinction which was mentioned at the bar between that case and the one now before us, is, that flour is sometimes applied to other uses, while the jury have found that this beef was an article of provisions used only as food for mankind. The distinction is not broad enough for the foundation of a judicial decision. Although flour is sometimes applied to other purposes, it is most generally used as an article of food.

Although the doctrine of Blackstone cannot be supported in its whole extent, I am not disposed to deny, that on a sale of provisions for immediate consumption, the vendor may be held responsible, in some form, for the sound and wholesome condition of the articles which he sells. It is not, perhaps, too much

to presume that butchers, grocers, and others who furnish by retail the usual supplies for the families of customers, are, from the nature of their employment, acquainted with the quality of the articles in which they deal. In *Van Bracklin* v. *Fonda*, (12 *John.* 468,) it was said that "in the sale of provisions for domestic use, the vendor is bound to know that they are sound and wholesome, at his peril. This is a principle, not only salutary, but necessary to the preservation of health and life." I find no difficulty in subscribing to that doctrine. But there is a very plain distinction between selling provisions "for domestic use," and selling them as articles of merchandize, which the buyer does not intend to consume, but to sell again. Such sales are usually made in large quantities, and with less opportunity to know the actual condition of the goods than when they are sold by retail. When provisions are not sold for immediate consumption, there is no more reason for implying a warranty of soundness, than there is in relation to sales of other articles of merchandize. We are of opinion that the maxim of *caveat emptor* was properly applied to this case by the court below; and as there was neither fraud nor express warranty, the action cannot be maintained.

Judgment affirmed.