WILLIAM C. HYLAND and others *v.* GEORGE W. SHERMAN and others.

Where, on a purchase of provisions, as merchandise to be sold again by the buyer, they are in a situation to be and are examined as fully as the buyer deems necessary, and there is no fraud, nor express warranty, nor representations amounting to a warranty, the maxim, *caveat emptor*, applies.

Although, on a subsequent further examination, a portion proves to be unsound and worthless, the buyer is liable for the contract price.

An authority to a third person to receive payment, does not make him the agent of the party in such sense that his acts or declarations can be given in evidence to affect the original contract or liability. (*a*)

---

(*a*) See *Kelly* v. *Kelly, post.*

It is well settled, that if a defendant, after a motion for a nonsuit, himself supplies the evidence on the want of which his motion was founded, he cannot have a reversal upon the technical ground that such evidence was not before the court when the nonsuit was asked.

Exceptions and rulings of the court below, not appearing in the return, cannot be brought to the notice of the appellate court, except by compelling a further or amended return.

THIS was an appeal by the defendants from a judgment of the Marine Court, in favor of the plaintiffs.   The facts appear in the opinion.

*Clinton Haring*, for the appellants.

*William R. Stafford*, for the respondents.

BY THE COURT.   WOODRUFF, J.—The return made in this case shows that the action was brought for goods sold and delivered.   The answer of the defendants is not stated.   We have, therefore, no means of ascertaining, by the return, what the issues of fact were which the court below were called upon to determine ; and yet the admissibility of much of the evidence offered by the defendants depends upon the state of the pleadings, and what defence was set up in the answer.

It will, however, seem unnecessary to send the case back for a further return, if it appears that, assuming the defence set up to be what the defendants' counsel states it to be, there was yet no error committed by the justice on the trial.

The defendants' counsel, in his opening argument, states that the defendants, in their answer, denied the sale to them, and claimed to recoup damages for deficiency in quality and quantity of the goods delivered.   The *defendants* will have no cause to complain, if this court, in considering the appeal, (instead of sending the case back for a corrected return,) assume that their counsel has stated the issue correctly.

It is first insisted, that the defendants purchased 44 barrels of onions, and only 43 were delivered, and that they had, therefore, a right to return the 43 barrels, and rescind the contract.

It is wholly unnecessary to controvert the general doctrine, that where an entire contract is made for a specific quantity of goods, the purchaser is not bound to accept a part, if the whole are not delivered. (*McKnight* v. *Dunlop*, 4 Barb. 44, and cases cited.)

The difficulty here is, that there is no evidence that the plaintiffs undertook to deliver the goods in question at the defendants' store. On the contrary, the evidence is, that the defendants purchased 44 barrels of onions at the vessel, either landed, or at the time being landed, on the dock. That the defendants employed the carman to take the onions to their store. So far as the evidence goes, the plaintiffs were only bound to deliver the onions on the dock where they were purchased—and it would seem that they did so, by delivering them to the carman, who was requested by the defendants to transport them. I mean to say, only, that the evidence is such as to warrant such a finding, and if the justice acted upon that view of the facts, we cannot say he so found without evidence, or that he erred in holding that such delivery to the carman was a performance of the contract of sale, so far as the number of barrels were material. It seems that the carman only took 43 barrels to the defendants' store, and delivered the other to the witness, Morand; but this, if the defendants employed the carman, was no breach of the plaintiffs' contract.

It is further claimed, that the plaintiffs having authorized the defendants to pay the price of the onions to the witness, Morand, the latter was thereby made the plaintiffs' agent, in such wise that "what took place between the witness and one of the defendants, in relation to the onions, after the sale," was competent evidence in the defendants' favor, and that the court erred in excluding it.

If the object was to show that the defendants had paid the money to the defendant, White, in pursuance of the authority given, the evidence was undoubtedly competent The question seems broad enough to embrace this fact; but it is obvious that the question was not put for any such pur-

pose—no such claim or pretence was made on the trial nor in the argument of the appeal, and we would not deem it erroneous in the court to exclude a question of so general a nature, when no point is given to it on the trial, which is pertinent to the real contest between the parties, although we can perceive, that under other circumstances, or to sustain other issues, the evidence proposed would be admissible.

For no other purpose was the witness, Morand, the plaintiffs' agent. He had no authority to sell, nor to modify the terms of a sale already made, nor to engage, on the plaintiffs' behalf, in any negotiation or conversation in relation to the onions ; and of course, therefore, no authority to make any declarations in relation thereto which could affect the plaintiffs.

How any declarations of his could be deemed, even by counsel, to be a part of the *res gestæ*, when his authority, even to receive the money, was not given until after the sale was made, and where in fact he never *did* any thing, is difficult to imagine. There was no *res gestæ* by him, and nothing to which the rule of evidence referred to can apply.

The appellants further insist, that the sale was made by sample, under an implied warranty that all of the onions were as good as such sample, and that at least, the goods sold being provisions, there was an implied warranty that they were fit for food ; and hence, that the justice should have permitted the defendants to show, that all except those which were unloaded on the dock, were rotten and worthless, and that the defendants offered to return to the plaintiffs the whole lot.

There is, I think, no ground for regarding the transaction in question as a sale by sample, in the sense in which a sale by sample has been said to imply a warranty that the bulk corresponds with the sample. Here the onions were themselves present ; a portion of the barrels were opened. The buyer had full opportunity to inspect as many barrels as he chose, even if the whole were not in fact unloaded and on the dock at the moment of purchase (as to which the

evidence is not very clear). The work was going on, and the purchaser might, if he chose, have opened every barrel. He had the same means of knowing or ascertaining their condition as the sellers had, and having examined so far as he deemed it necessary, he purchased. Such a transaction is not a purchase by sample, but a purchase on examination of the goods. Here all the barrels were not examined, and no doubt the barrels which were not opened were supposed to contain onions in the same condition as the others; and probably it is not usual in such cases for the buyer to examine all. Both seller and buyer act upon the probability that an examination of some of the barrels, taken promiscuously, will furnish a fair test of the quality of the whole. But in such case, each takes the risk; the buyer can no more complain if the residue prove inferior to those examined, than the vendor could demand an enhanced price if they proved very far superior. If there be no fraud, each acts at his peril.

As to the supposed warranty, that, being provisions, they were suitable for food, if it be true that any such warranty is implied on a sale of food for domestic use, it has been distinctly held that there is no such warranty when the provisions are sold as merchandise, to be sold again by the buyer. (*Moses* v. *Mead,* 1 Denio, 378, and see cases there cited.)

In either aspect of the case, it is so easy for a buyer to protect himself by an express warranty that the residue of the goods are equal to those examined, or that they are all of a certain quality, or that all are suitable for food or the like, that it is at least doubtful whether the doctrine of implied warranty ought ever to obtain recognition, unless it be where immediate use for food is the object in view, in which case public policy, (having in view the health of the community rather than the particular pecuniary interest of the individual buyer,) seems to require such a protection against the sale of unwholesome provisions.

There being no pretence of fraud in this case, and no express warranty, I think the ruling below was not erroneous.

Hyland *v.* Sherman.

It is argued that the language of the plaintiff, in which he said the onions were *good*, was itself a warranty. I think not. It was part of a discussion had on the actual examination of the opened barrels, and in reference to the *price.* The defendant was urging that the price was too high. The plaintiff insisted that it was not; but, on the contrary, that it was low, and that he was not asking the highest price. The witness says, they were called the third class onions. The seller's saying the onions were good, was at most the ordinary language of a vendor puffing his goods, and nothing is more obvious than that it was neither said nor received as a warranty by the vendor, of their quality, nor was it acted upon as such. The purchaser obviously relied upon his own judgment, and while he might have gone further, and required a guaranty from the plaintiffs, he omitted to do so. (*Hargous* v. *Stone,* 1 Selden, 73.)

A nonsuit was further urged, upon the ground that the co-partnership of the defendants was not proved, at the time the motion for a nonsuit was made. It is sufficient to say on this subject that, if at the time the plaintiffs rested their case, no such proof had been given, the defendants afterwards supplied the defect by the evidence of their own clerk, who testified that the defendants received the onions; and although he says that *thirty-three* barrels came at *one time,* he does not contradict the other evidence, that there were forty-four barrels in the lot when purchased and placed in charge of Thompson, the carman, by whom the thirty-three barrels, he says, were brought to the defendants' store. Whether the other ten barrels came at *another time,* the witness does not say, and, perhaps, he did not know, but under the views first above suggested, this was not material. Enough was thus shown to connect all of the defendants with the onions, as joint purchasers. And it is well settled, that if a defendant, after a motion for a nonsuit, himself supplies the evidence, on the want of which his motion was founded, he cannot ask a reversal upon the technical ground that such evidence was not before the court at the moment when the nonsuit was asked.

The notice of appeal states several other offers of evidence, rulings and exceptions, as grounds therefor, some of which, if they were actually made and taken, would, I think, have required a reversal of the judgment.   But these rulings, offers of evidence and exceptions, do not appear in the return.   The case does undoubtedly appear, in some aspects, a hard one for the defendants, and if the proceedings in the court below were as the nature of the appeal assumes or states them, it is to be regretted that the attention of the justice was not called to them by an application for a further return respecting the matters overlooked by him in making the original return, but this defect, if any, we cannot remedy; we must be governed by the return as it is, and not by the statements of the counsel in the argument.   The judgment must, therefore, I think, be affirmed.

Judgment affirmed.