SUPREME COURT.   Broome General Term, January, 1858.   *Gray,*
*Mason and Balcom* Justices.

## CHARLES B. GOODRICH, plaintiff in error *v.* THE PEOPLE, defendants in error.

Where an inidctment for selling unwholesome beef charged that the defendant sold the beef in question to divers citizens " as good and wholesome beef and food," it was held to be a sufficient averment that it was sold to such citizens, to be eaten by them.   MASON J., dissenting.

And it is no defect in such an indictment that the persons are not named to whom the beef was sold, if it is alleged in the indictment that such persons were "to the jurors unknown."

Nor is it necessary to allege in such an indictment that the defendant intended to injure the health of the persons who ate the beef, or that it did injure their health.

What is a sufficient averment of time and place in such an indictment.

To sustain an indictment for this offence, against a person who had owned a diseased cow and had slaughtered her and sold her for food, it is enough to prove that the disease was known to the defendant and that the nature and tendency of the disease was such as to taint and affect the flesh of the entire animal so as to make it unwholesome in any degree, although the taint was imperceptible to the senses and although the eating of the flesh produced no apparent injury to those who ate it.

On the trial of such an indictment, it is competent to prove what was said to the defendant before he sold the beef, by a third person, on the subject of the unwholesomeness of the beef for food, though no response was made by the defendant, such evidence being proper on the question whether the defendant knew or believed that the meat was bad when he disposed of it.

It is proper on such a trial to prove by physicians that the eating of diseased and unwholesome meats does not always cause apparent sickness and also for physicians to give their opinion of the nature of the disease of which the cow died, founded on the descriptions which other witnesses had given of the ulcerated condition of the animal and also to state whether, in their opinion, the disease would cause fever, and whether the flesh of animals laboring under a fever is unwholesome for food.

WRIT of error to the Tioga sessions, to remove into this court an indictment against the defendant and the record of his conviction thereon for selling unwholesome beef.

The indictment was found in the Oyer and Terminer, and was sent to the Sessions for the trial of the defendant thereon; and it was in the words following, to wit:

*Court of Oyer and Terminer in and for the county of Tioga :*

At a Court of Oyer and Terminer held in and for the county of Tioga, at the court house in the village of Owego, on the third Monday of February in the year of our Lord one thousand eight hundred and fifty-seven.

Present, Hon. Hiram Gray, a justice of the Supreme Court presiding judge of the said Court of Oyer and Termimer; Hon. Stephen Strong, county judge of the said county, and John L. Howell and Nathaniel F. Moore justices of the peace in and for the county of Tioga, duly designated as members of the Court of Sessions in and for the said county of Tioga.

The jurors of the people of the state of New-York, in and for the body of the county of Tioga, to wit : [ the names of twenty-three jurors were here given] good and lawful men of the county of Tioga ; then and there being duly sworn and charged to inquire for the people of the state of New-York, in and for the body of the county of Tioga upon their oath.

*Tioga County, ss. :*

The jurors of the people of the state of New-York, in and for the body of the county of Tioga, upon their oath aforesaid, do present, that Charles B. Goodrich, late of the town of ———, on the twentieth day of December, in the year of our Lord one thousand eight hundred and fifty-six, at the town of Owego in said county, knowingly, willfully, deceitfully and maliciously, did expose to sale and did sell to divers citizens of the state of New-York, to the jurors aforesaid unknown, divers, to wit: five hundred pounds of beef as good and wholesome beef and food, and then and there delivered said beef to the said divers citizens aforesaid : whereas in truth and in fact the said beef was not good and wholesome beef and food, but on the contrary thereof was unwholesome and diseased, and unfit for food, and not fit to be eaten by man, he, the said Charles B. Goodrich, then and

Goodrich *v.* The People.

there well knowing the said beef to be diseased and unwholesome and not fit to be eaten as aforesaid, against the peace of the people of the state of New-York and their laws and their dignity, and against the form of the statute in such case made and provided.

B. F. TRACY,
*District Attorney.*

The following objections were raised to the indictment, on the trial, and by motion in arrest of judgment, by the defendant's counsel: First. That there was no evil intent alleged in it. Secondly. That the words "then and there" were omitted before the words "good and wholesome beef fit for food," and that the words "then and there" were omitted before the words "unwholesome and diseased and unfit for food and not fit to be eaten by man;" and that the words "then and there" were omitted in another part of the indictment before the words "diseased and unwholesome and not fit to be eaten." Thirdly. That there was no allegation in the indictment that the beef was sold for food and with the intent that it should be eaten. Fourthly. That the general allegation that it was sold to divers citizens of the state, &c., was not sufficiently definite and certain. Fifthly. That there was no allegation in the indictment that the beef had been used as food by man and produced injurious effects and proved unwholesome; or that if it had been used for food it would have been likely to have produced injurious effects.

The Court of Sessions overruled the objections and held the indictment good, and refused to discharge the defendant without a trial, and refused to arrest the judgment after the jury had found the defendant guilty. The defendant by his counsel duly excepted to the decisions of the court.

It was proved upon the trial that the defendant had a cow which was troubled with a large filthy sore on her head, in and about one eye; that he killed her, and sold the meat to

Goodrich *v.* The People.

different persons in Owego ; but there was no evidence given that the meat made any of the persons apparently sick who ate of it. When the cow was slaughtered the sore was from four to six inches in length, and as the cow fell down the eye burst open and the sore discharged so much and such foul matter that it made a man, who was assisting the defendant in dressing the cow, " sick at the stomach." The defendant had " doctored " the sore for several months before he killed the cow and it grew worse all the time, and there was evidence that she had lost flesh by reason of the sore.

A witness for the people was permitted to testify that just before the cow was killed by the defendant or soon afterwards, and before the defendant sold the beef, he heard the defendant's wife say to the defendant " that she would not like to cook any of the meat in the house, if she did she would not like to eat it ; she would think of the eye when she ate it ; that she did not know but the meat was just as good as any." The witness said he did not know that the defendant said any thing in reply to what his wife said.

The evidence of what the defendant's wife said was objected to, and each and every part thereof, by the defendant's counsel, as immaterial and irrelevant, and that the defendant was not bound by her declarations. The court overruled the objection, and the defendant's counsel excepted to the decision.

The district attorney put to two physicians the following question, viz.: " Does the fact that the meat was eaten with apparent impunity, and no obvious ill effects produced, prove that it was not unwholesome food ? "

The question was objected to by the defendant's counsel on several grounds, but the court overruled them and permitted the physicians to answer the question, and the defendant's counsel excepted.

Their answers were : First. " The fact that the meat was eaten with apparent impunity, and no obvious ill effects

produced, does not prove that it was not unwholesome food;" Second. "The fact that unwholesome food is sometimes eaten with impunity does not necessarily prove anything as to the wholesomeness or unwholesomeness of the food."

The physicians gave other evidence, which is noticed in the opinion of the court.

The court charged the jury, if they believed from the evidence that the cow was diseased, that the disease was known to the defendant, and that the nature and tendency of the disease was such as to taint and affect the flesh of the entire animal in any degree, although the taint was imperceptible to the senses, and although the eating of the flesh produced no apparent injury to those who ate it, still, as the probable consequence of eating the flesh of unhealthy and diseased animals may be highly injurious, the defendant was guilty of the offence set out in the indictment.

The defendant's counsel excepted to each and every part of the charge, and he requested the court to charge the following propositions, to wit:

First. That in order to convict the defendant of the offence charged against him, he must be shown to be a person of skill, in order to have a guilty knowledge that a disease located in and about the head would render the body of the animal diseased and unwholesome for food.

Secondly. That guilty knowledge of the disease in the head or extremity is not presumptive evidence of guilty knowledge that the meat was unwholesome for food.

Thirdly. That the knowledge of a sore upon the head does not necessarily imply guilty knowledge of a disease in the body or meat which was sold for food that would render the meat unwholesome.

The court declined to charge in manner and form as requested, and stated that the court supposed that the charge given embraced the whole law applicable to the case.

Goodrich *v.* The People.

The counsel for the defendant excepted "to the above ruling and decision of the court."

The court sentenced the defendant to pay a fine of $75, and stand committed until the fine was paid.

*B. F. Tracy* (District Attorney), for the people.

*N. W. Davis,* for the defendant.

*By the Court,* BALCOM, J.—Blackstone says : "The selling of unwholesome provisions" is an offence against public health. (4 *Bl. Com.,* 162.) It is laid down by Russell "that the public health may be injured by selling unwholesome food." (1 *Russ. on Cr.,* 115.) This author again mentions "the selling of unwholesome provisions" as an indictable offence, and remarks : " It is said, more largely, that the giving of any person unwholesome victuals, not fit for man to eat, *lucri causa,* or from malice and deceit, is undoubtedly, in itself, an indictable offence." (2 *Russ. on Cr.,* 286.) The same principle is stated by Roscoe. (*Rosc. Cr. Ev.,* 379, *4th Am. ed., from 3d Lond. ed.*) Roscoe further says : " It is a nuisance for a common dealer in provisions to sell unwholesome food, or to mix noxious ingredients in the provisions which he sells." (*Id.,* 797.) Wharton enumerates "the selling of unwholesome provisions" among misdemeanors. (*Whart. Am. Cr. L.,* 36.) Barbour remarks that "selling unwholesome provisions is a misdemeanor at common law." (*Barb. Cr. Tr.,* 223.)

The indictment in *Treeves'* case charged the sale of five hundred pounds weight of unwholesome bread, " to be eaten as food." (2 *Russ. on Cr.,* 286 ; 2 *Chit. Cr. L.,* 558.) In *Dixon's* case the allegation in the indictment was, that the defendant, a baker, supplied to the Royal Military Asylum, as and for good wholesome bread, divers loaves mixed with certain noxious ingredients not fit for the food of man, which he well knew so to be at the time he so supplied them.

Dixon was convicted, and his conviction was affirmed *in banc.* (*Rex* v. *Dixon*, 4 *Camp.*, 12; 2 *Russ. on Cr.*, 287; 2 *Chit. Cr. L.*, 559.)

Indictments have been held good which stated the sale and delivery of unwholesome bread to C. D., for the use and supply of himself and others. (2 *Chit. Cr. L.*, 556, *&c.*) In one case, the objection was taken to the indictment, on a motion in arrest of judgment, that it did not specify that the unwholesome loaves of bread were delivered "to be eaten," and the court held that the allegation that the loaves were delivered for the use and supply of children must mean that they were delivered for their eating. (4 *Russ. on Cr.*, 116.)

The statement in the indictment in this case that the defendant sold the beef to divers citizens "as good and wholesome beef and food," means that he sold it to such citizens to be eaten by them. It would be absurd to hold that the language of the indictment authorizes the conclusion that such citizens may have purchased the beef for their dogs, or for any purpose except for themselves or families to eat; and no inference can be "spelled out of" the indictment that the defendant intended to sell the beef to be applied to any use, by the purchasers, other than food for themselves or their families.

The evil intent of the defendant in making the sale, and the time and place in which he made it, are sufficiently averred in the indictment. It is true that the form of the indictment might be improved, but still it is sufficient to uphold the conviction on it. The indictment is not defective because the persons are not named in it to whom the defendant sold the beef, for they were unknown to the jurors. (2 *Chit. Cr. L.*, 558); and it was not necessary to set forth what rendered the beef unwholesome, or to state that the defendant intended to injure the health of the persons who ate it, or that it did injure their health. (2 *East P. C.*, 822 · 3 *Maul. & Sel.*, 16.)

Goodrich *v.* The People.

What the defendant's wife said to him about the unwhole-someness of the meat did not tend to establish the fact that it was unwholesome; but it was competent evidence to show that the defendant's attention was called to the condition of the meat before he sold it. It proved very little any way; but it was nevertheless competent evidence on the question whether the defendant knew or believed the meat was bad when he disposed of it.

The questions put to the two physicians were unobjection able. It was proper for the people to establish that the eating of diseased meat does not always cause apparent sickness. It was also proper for them to give their opinions, from the description which other witnesses gave of the sore on the cow's head, as to the nature of the disease which the cow had, and that it would cause fever, and that the flesh of animals laboring under a fever is unwholesome.

The charge of the court to the jury was substantially correct. I am aware that the broad proposition is asserted by Wharton, that "to support an indictment for knowingly selling unwholesome provisions, the provisions sold must be in such a state as that, if eaten, they would, by their noxious, unwholesome and deleterious qualities, have affected the health of those who were to have consumed them" (*Whart. Am. Cr. L.*, 701); and I shall not attempt to controvert this proposition, nor does the charge of the court conflict with it. As I understand the evidence of the physicians, the eating of diseased meat, although it produces no obvious ill effects, does in reality injure the health of those who consume it. The jury must have understood from the charge that they could not convict the defendant unless the meat was in such a state as to injuriously affect the health of those who ate it, but that it was not necessary to his conviction that the injury should be apparent to the senses, if the medical testimony satisfied them that it did or would injure the health of those who partook of it, provided the defendant knew the cow was diseased from which the meat was

taken. And this construction of the charge is in harmony with the proposition laid down by Wharton.

Dealers in tainted provisions have no right to palm off their noxious articles until they have prostrated those who eat them by actual sickness. The people must be protected against the sale of unwholesome provisions by the punishment of persons who deal in them, though nobody be made apparently sick by eating them.

The fact that no person was affected injuriously by eating the beef which the defendant sold, was strong evidence that it was wholesome, but it was not conclusive; and this court cannot say but that the jury gave due weight to it in determining the case.

The court did not err in refusing to adopt the three propositions which the defendant's counsel insisted should be stated to the jury as legal rules to govern them in determining the case. Nor was the court bound to mention them as pertinent suggestions in regard to the questions of fact in the case. The facts were probably discussed before the jury sufficiently by the defendant's counsel; at least, such is the presumption; and the court did not err in the opinion that the charge, as made, embraced the whole law applicable to the case.

The facts that the cow was diseased, and that the defendant knew it, were undisputed; and the presumption is that no part of an animal that is rotten with disease in any place is fit food for man to eat.

The defendant sold the meat of the cow after his wife had told him she would not like to cook it or eat it, and he took the risk upon himself that it was wholesome, when he disposed of it, knowing that it came from a diseased cow. (*Rex* v. *Dixon,* 4 *Camp.,* 12.)

The verdict was not against evidence. The defendant was rightfully convicted; and his conviction and sentence should be affirmed.

The following dissenting opinion was delivered by

MASON, J.—The charge of the court below was right.
If the nature and tendency of the disease was such as to
taint and affect the flesh of the entire animal in any degree,
and this was known to the defendant, he was guilty of a
misdemeanor in selling it to persons to be eaten by them;
for, if the unwholesome food may be injurious to the health
of those who eat it, that is sufficient. It is not necessary
that it actually should have proved injurious to the health
of those who consumed it.

I am inclined to think, however, that the court below
should have arrested the judgment, on the ground that the
indictment fails to charge a criminal offence.

The security of the accused requires precision and cer-
tainty in a criminal pleading, and will not admit anything
to be taken by intendment. ( 6 *Metc.,* 264.) As I under-
stand the law, to constitute the criminal offence of selling
unwholesome meat it is necessary that it be sold for the
food of man, or for his use as food; and it is necessary to
aver in the indictment that the unwholesome article was
sold for the food of man, or some other equivalent allega-
tion, showing that it was sold for the use of a person or
persons to be eaten as food. The indictment in the case at
bar does not contain such an allegation. It alleges that the
defendant did sell to divers citizens of the state, to the jurors
unknown, divers to wit, five hundred pounds of beef as good
and wholesome beef and food, and then and there delivered
the same, &c. This is not an averment that it was sold for
the use of any of these divers citizens as food, or that it was
designed, either by the seller or buyer, that they should use
it as food for themselves or in their families. This indict-
ment is not sufficient, in my judgment, to sustain the con-
viction. There is no averment that the beef was sold to
these persons to be consumed as food, and consequently the
indictment does not charge a criminal offence. ( *Moses* v.

*Mead,* 1 *Denio,* 387; 3 *Maule & Sel.,* 11; 2 *East P. C.,* 821; 4 *Camp.,* 11; 3 *John. Cas.,* 265, 267; *The State* v. *Norton,* 2 *Ire.,* 40; 2 *Hale P. C.,* 165.)

The judgment of the Court of Sessions should be reversed, and judgment on the verdict of conviction be arrested on this ground.

GRAY, J., concurred in the conclusions arrived at by Justice Balcom, and the judgment of the Tioga Sessions was thereupon affirmed.

---

SUPREME COURT. New-York General Term, February, 1858. *Davies, Clerke* and *Sutherland,* Justices.