CLARENCE R. WHIPPLE, Appellant, *v.* MORRIS SHERMAN, Respondent.

County Court, Madison County, May, 1923.

Sales — no implied warranty on sale of cow that she is fit for food — when cow is found tubercular buyer must nevertheless pay agreed price in absence of warranty.

The rule that an implied warranty of soundness attaches to provisions sold for domestic use has no application to the sale of a cow to a butcher.

On the same day that defendant, a butcher and retail dealer in meat, bought a cow from plaintiff, a farmer, at the agreed price of fifty dollars, the defendant caused her to be taken to his slaughter house. After the cow was killed it was discovered that she had tuberculosis and that the front quarters at least were unfit as food. Defendant sent for plaintiff and called his attention to the diseased condition found, and having sold some portions of the meat to a dealer offered to pay plaintiff twenty dollars on account of what was salvaged, but plaintiff refused to accept the sum offered. Upon the trial of an action in Justice's Court to recover the purchase price, the defendant testified that the cow at the time of the sale looked as though she would make good beef and there was no evidence from which fraud could be inferred in the sale. There was no express warranty or guaranty as to the condition of the cow and not only was there nothing in conversations testified to by the various witnesses from which it could be inferred that defendant asked or received any guaranty against any kind of unsoundness, but it was evident that all concerned believed and assumed that the cow was sound and that defendant relied upon his own judgment in the matter. *Held*, that the rule of *caveat emptor* applied, and a judgment dismissing the complaint will be reversed and a new trial ordered before the same justice, with costs to the appellant to abide the event.

APPEAL from judgment dismissing complaint.

*J. A. Johnson*, for appellant.

*C. J. Coleman*, for respondent.

SENN, J. This is an appeal from a judgment dismissing the plaintiff's complaint, with costs, rendered in Justice's Court of the town of Eaton on the 9th day of December, 1921.

The action was for the purchase price of a cow sold by the plaintiff to the defendant about August 1, 1921, at the agreed price of fifty dollars.

The plaintiff was a farmer and the defendant was a butcher and retail dealer in meat, having a meat market at Bouckville.

There is no serious dispute about the facts. Plaintiff was in defendant's market and heard one of defendant's men say to defendant, "We have got to have a beef," or words to that effect, whereupon plaintiff stated in substance that he had a good cow for beef. Defendant replied that he would come and look at her. After that he and a Mr. Oliver went to plaintiff's farm and looked at the cow. After some dickering as to price and delivery of the cow, defendant purchased her, agreeing to pay fifty dollars. The cow was temporarily left in plaintiff's barn, but soon after (the same day, I believe) the defendant caused her to be taken to his slaughter house and killed. It was then discovered that she had tuberculosis and that the front quarters, at least, were unfit for consumption as food. Defendant sent for plaintiff and called his attention to the diseased condition found. Defendant was able to sell some portions of the meat to a dealer in Utica and offered to plaintiff twenty dollars on account of what was salvaged, or,

as defendant testified, he was willing to stand that much of the loss. Plaintiff refused to accept this and the purchase price of the cow remains unpaid.

It is not claimed that either of the parties, at the time of the sale of the cow and before she was killed, knew or had reason to suspect that she was unsound or unfit for human food. The defendant himself testified that she looked as though she would make good beef. There is no evidence in the case from which fraud can be inferred. Neither was there any express warranty or guaranty as to the condition of the cow. Saying that she was a good beef cow was not such a warranty. *Wart* v. *Hoose*, 65 Misc. Rep. 462. That was presumably a reference to her general and apparent fitness for beef, such as size, age, etc. There was nothing in the conversations as testified to by the various witnesses from which it can be inferred that the defendant asked or received any guaranty against any kind of unsoundness. On the contrary, it is evident that all concerned believed and assumed that she was sound and that the defendant relied on his own judgment in the matter.

It is, therefore, simply a question as to which of two innocent parties shall sustain the loss. There being no express warranty the question remains as to whether there was an implied warranty or guaranty that the animal was fit for food. In *Wart* v. *Hoose*, *supra*, where the facts were in nearly every detail parallel to the one at bar, Judge Kellogg, in a well-considered opinion, held that there was not.

Where provisions are sold as merchandise and not for consumption by the purchaser, but for sale to consumers, there is no implied warranty of soundness. There is a very plain distinction between selling provisions for domestic use and selling them as articles of merchandise, which the buyer does not intend to consume, but to sell again. *Moses* v. *Mead*, 1 Den. 378. The reason being that in the latter case the buyer presumably relies on his own skill, while in the former he relies on the knowledge and skill of the vendor.

" While it is true that it was understood at the time that the animal was to be thereafter converted into meat and sold for food yet, as between these parties, she was the same as any article of merchandise; and, in the absence of fraud, deceit or express warranty, the maxim of *caveat emptor* must apply." *Cotton* **v.** *Reed*, 25 Misc. Rep. 380.

The rule that implied warranty of soundness attaches to provisions sold for domestic use has no application to the sale of a cow to a butcher. *Kinch* v. *Haynes*, 58 Misc. Rep. 499. This

was a case where the plaintiff, a butcher, had purchased two cows of the defendant, a farmer. After he had started with the cows and gone fifteen to twenty rods up the road from the barn he noticed that one of the cows breathed hard and called defendant's attention to it and defendant said, " She is all right." She proved to be tubercular. The plaintiff did not and could not sell the same for meat. Held, that the words " She is all right " was not a warranty, but merely an expression of opinion, which did not influence the sale.

I appreciate that to the average mind it may seem unjust that the defendant should be obliged to pay for a diseased and practically worthless cow. However, it was for him to consider this possibility when he made the purchase. Especially so since it is a matter of common knowledge that cows apparently sound occasionally prove to be tubercular. He could have protected himself by asking the plaintiff whether he would guarantee her to be sound. If plaintiff refused to make any guaranty the defendant was not obliged to purchase. The rule of *caveat emptor,* " let the buyer beware," is not so unreasonable, after all. At civil law the opposite principle, *caveat venditor,* " let the seller beware," was the rule. Under that law the vendor was liable for defects in goods which were not apparent unless he protected himself by stipulating or having it understood that he guaranteed nothing. The common-law rule of *caveat emptor* seems to me to be the most reasonable. There is no reason why a purchaser should not inquire and ask for a guaranty when he is in doubt. But for a vendor to volunteer the statement that he guaranteed nothing would be to invite a suspicion that the goods were not all right, when perhaps he had no reason to believe they were not so. As said by the chancellor in *Wright* v. *Hart,* 18 Wend. 448, 452: " It is not so material which way the law is established, so that the rule should be uniform, and perfectly understood, so that buyer and seller may know with certainty what the law is, and each be enabled to protect his own rights by the form of the contract."

If Mr. Sherman had asked, " Do you guarantee her to be sound? " and Mr. Whipple had answered, " yes," or if that had been the substance of the conversation, the defendant would have been protected and would have had a good defense to this action. As it is he has none.

It is provided by section 93 of the Personal Property Law that any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods

and if the buyer purchases the goods relying thereon. But no affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only, shall be construed as a warranty.

Section 96 of the same law, so far as applicable here, is that there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods sold, unless the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment. Where these two things concur there is an implied warranty that the goods shall be reasonably fit for such purpose.

In the case at bar, while it is true that the particular purpose for which the cow was required was made known to the seller and was well understood by all concerned, the defendant did not rely on the plaintiff's skill or judgment, but relied on his own. It follows, under the statutes as well as the authorities, that the plaintiff was entitled to judgment against the defendant for fifty dollars and costs.

The judgment appealed from is, therefore, reversed and a new trial ordered before the same justice, with costs of the appeal to the appellant to abide the event. All other costs to abide the event.

Judgment reversed.