J. Aron & Company, Inc., Respondent, *v.* Howard L. Sills and Another, Doing Business under the Name and Style of John S. Sills & Sons, Appellants.

First Department, November 28, 1924.

Sales — action by buyer for breach of warranty of quality of condensed milk — seller purchased milk from manufacturer for export — implied warranty exists on part of seller, who is middleman, that milk is wholesome and fit for use for which it is intended — provision indorsed on invoice limiting time for complaint as to quality not binding — damages — special damages recoverable under allegations in amended complaint.

An implied warranty that condensed milk, purchased for export for human consumption, is wholesome and fit for the use for which it is intended, arises in favor of a buyer and against the seller, a wholesaler or middleman, who purchased the milk from the manufacturer.

A provision indorsed on the invoice of the milk limiting the buyer's right to claim damages for breach of warranty to a period of three months from the date of delivery is not binding on the buyer where no such provision is contained in the contract of sale.

The buyer is entitled in this action to recover special damages under the allegations of the amended complaint.

Smith, J., dissents.

Appeal by the defendants, Howard L. Sills and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of January, 1924, upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of January, 1924, denying the defendants' motion for a new trial made upon the minutes.

*George Ryall* [*Isaac N. Mills* of counsel] for the appellants.

*Bouvier, Caffey & Beale* [*B. F. Norris* of counsel], for the respondent.

Merrell, J.:

This action is brought to recover on two causes of action damages alleged to have been sustained by the plaintiff by reason of the breach of warranty on the part of the defendants as to the quality of a quantity of condensed milk sold by the defendants to the plaintiff for export.

The defendants are wholesale grocers in the city of New York of many years business standing. On September 17, 1917, the plaintiff confirmed the purchase from defendants of 1,000 cases of sweetened condensed milk expressly guaranteed to be of United States government standard, at seven dollars and twenty-five cents

First Department, November, 1924.          [Vol. 211

per case F. O. B. New York. The milk was to be packed in wooden cases suitable for export and at the time of the purchase. by the plaintiff of the defendants the goods were *en route* from Bridgeton, N. J., where they were manufactured by the Bridgeton Condensed Milk Company, to New York city. On the day following the confirmation of the purchase by the plaintiff the shipping documents for the 1,000 cases of milk embraced in the first order were turned over to the plaintiff and the goods were actually delivered by the defendants to the plaintiff. That the goods in question were understood to have been purchased by the plaintiff for export is clearly indicated by stipulations on the order that the goods were to be contained in " cases made of wood suitable for export and strapped." Correspondence between the parties also indicated that the defendants knew that the goods were purchased for export. The milk was purchased by the plaintiff and paid for without inspection or opportunity therefor on plaintiff's part. The goods were paid for upon presentation of the invoice with the shipping documents attached. The 1,000 cases of condensed milk were shipped to France on the steamship *Susquehanna,* and upon being unloaded from the steamer at the port of Havre, France, 748 cases out of the shipment of 1,000 cases were found composed of bulged cans, many of which had already burst, and others found to contain carbonic acid gas in large quantities, the cans bulging and in many instances to an extent that the wooden shipping cases were distorted and bulged out of shape. When punctured the cans emitted gas and the contents spurted forth; the milk was yellow in color, had a disagreeable taste and odor and in some cases was foaming and in others the contents had become a solid mass. There is no doubt from the evidence, and, indeed, it is conceded that the milk as delivered was unfit for human consumption because of fermentation. An abundance of evidence was offered that the fermentation was due to improper sterilization and improper methods exercised in the manufacture of the milk. It was also found upon analysis that the milk was not up to the United States government standard which required eight per cent of milk fats, and that the analysis of the chemists disclosed that the milk delivered contained only seven and six-tenths per cent of fats, and that the milk contained two-tenths per cent of alcohol.

The second cause of action was to recover also for breach of warranty on the sale and delivery of a second order of 2,000 cases of the sweetened condensed milk at the price of seven dollars per case F. A. S. New York, which was also to conform to the United States government standard and to be packed in wooden cases

suitable for export and to be strapped, payment to be made against railroad documents, and if the plaintiff was unable to secure export authority the merchandise was to go forward under domestic ladings. This order was accepted in writing by the defendants who stated in their acknowledgment that 1,000 cases had already been shipped on the steamer *Susquehanna.* There was ample evidence showing that the parties both understood that these goods were purchased for export. The milk was received and paid for by the plaintiff against the delivery of the bills of lading, and there was, therefore, no opportunity for inspection on the part of the plaintiff. The 2,000 cases ordered on July 31, 1917, were loaded on the steamer *Burmese Prince* on September 6, 1917, for shipment to St. Nazaire, France. When the goods arrived at St. Nazaire, 369 of the 2,000 cases were found to be defective and the cans bulged and burst, and the milk fermented and having a bad odor similar to the condition which obtained as to the 1,000 cases under the other order.

A large amount of evidence was given as to the condition of this milk on its arrival in France. This evidence was by way of depositions taken in France and is uncontradicted by the defense. There was also an abundance of expert testimony offered on the part of the plaintiff showing that the cause of the faulty condition of the milk did not arise after its purchase by the plaintiff, but was due to improper fabrication; that when the milk was received in New York the defects were latent and undiscoverable except by a chemical analysis; that the gaseous condition arising from the improper sterilization would increase and finally all of the cans would burst from the presence of carbonic acid gas. An attempt was made on the part of the defense to show that the condition of the milk might be attributed to heat or other conditions prevailing during the long time which elapsed from the time of shipment at the port of New York to arrival at France, but I think the evidence clearly preponderated in favor of the plaintiff's contention that the whole difficulty was with the improper fabrication of the milk.

The main question presented upon this appeal is whether there was an implied warranty on the part of the defendants, sellers, that the milk which concededly was for human consumption, was wholesome and fit for the use for which it was intended. The appellants urge that the courts have never gone to the extent of holding a seller, other than a retailer, liable upon an implied warranty. While it is true that most of the cases upon the subject, and notably *Rinaldi* v. *Mohican Co.* (225 N. Y. 70); *Race* v. *Krum* (222 id. 410); *Chysky* v. *Drake Bros. Co.* (235 id. 468) and *Moses* v.

*Mead* (1 Den. 378) all seem to base the doctrine of implied warranty upon the fact that the seller was the fabricator or at least was a retailer, nevertheless, it seems to me that the doctrine should be extended to middlemen as was the case of the defendants at bar. Otherwise, there would be no recourse on the part of the purchaser for damages for a breach of an implied warranty of this sort. In the case of *Chysky* v. *Drake Bros. Co.* (*supra*) it was distinctly held that no action would lie for damages for breach of an implied warranty on a sale of foodstuffs except between the actual purchaser and seller of the foodstuffs between whom there was a privity of contract. In the *Chysky Case* (*supra*) the plaintiff was employed in a restaurant and as a part of her compensation received her meals there and was given on an occasion a piece of cake manufactured by the defendant and sold to her employer. In the cake was a piece of a nail which when the cake was eaten punctured the young lady's gums resulting in the loss of three of her teeth. She brought action against the manufacturer of the cake and recovered at Trial Term. Her recovery was affirmed in this court (200 App. Div. 864), but the Court of Appeals reversed (235 N. Y. 468), basing its decision upon the ground that there was no privity of contract between the plaintiff and the defendant who manufactured the cake. The opinion of the Court of Appeals in the *Chysky Case* (*supra*), after reviewing the cases of *Race* v. *Krum* (*supra*) and *Rinaldi* v. *Mohican Co.* (*supra*), both of which cases involved sales of food by a retailer for human consumption, stated: " Under the section of the Personal Property Law [§ 96, as added by Laws of 1911, chap. 571] referred to and the *Rinaldi* case, an action may be maintained to recover damages caused by the breach of an implied warranty in the sale of food to a consumer for immediate consumption. Whether this warranty extends to a wholesaler was expressly reserved in the *Rinaldi* case, but is now squarely presented."

Notwithstanding that the question as to whether an implied warranty extended to the defendant wholesaler in that case was squarely presented, as stated in the opinion, the Court of Appeals does not seem to have decided the question, but merely held that there could be no recovery by the consumer in that case because there was no contractual relation between her and the defendant, who had manufactured the cake and sold it to plaintiff's employer. Such being the law as settled by the Court of Appeals, there would be no cause of action on the part of the plaintiff in the case at bar for breach of warranty against the Bridgeton Condensed Milk Company, which manufactured the milk. In the case at bar the question is squarely presented whether a wholesaler or middle-

man is liable upon an implied warranty that food which is purchased from a manufacturer and sold for human consumption was wholesome and fit for the purpose intended. We are of the opinion that the defendants were so liable, and that such a holding works out justice between all parties. If the defendants are held liable upon their implied warranty that the milk was fit for human consumption, they would have recourse over against the Bridgeton Condensed Milk Company for reimbursement of the damages which they had suffered as the result of the faulty fabrication of the milk which the defendants had purchased from the condensed milk company and had sold to the plaintiff herein, and we can see no good reason why the defendants should not be held responsible. It was nowhere stated in the contract from what source defendants were to procure the milk to fill plaintiff's order. So far as appears, defendants might themselves have been the manufacturer of the milk; at least, they might have, by inspection, ascertained that the milk was wholesome and fit for the purpose for which it was sold.

An abundance of evidence was offered in the case showing the various steps properly taken in the manufacture of condensed milk, and evidence was also given showing that the fabricators of the milk in question were careless and did not observe the proper care in the manufacture of the goods in question. If we were to hold that there was no implied warranty as between the middleman, the defendants here, and the plaintiff, then the plaintiff would be without remedy, as the plaintiff would have no cause of action against the manufacturer of the milk because of the non-existence of any contractual relation with such manufacturer. (*Chysky* v. *Drake Bros. Co.*, 235 N. Y. 468.) If that were to be established as the law, then any manufacturer of foodstuffs could put upon the market inferior or even poisonous goods and, if sold through a middleman to a customer, the consumer would have no remedy whatever against any one.

It is also claimed by the appellants that as a part of the contract there was a provision that any claim for inferiority of the goods sold must be made within three months from delivery under the contract. There was no such provision in the original contract, but there was indorsed upon the invoice a provision thus limiting the liability of the seller. I do not think that as matter of law that was any part of the contract. As to the first cause of action, the goods were purchased by the plaintiff verbally and confirmed by the plaintiff's written order which contained no reference to any such limitation, and immediately the goods were delivered by delivery of the documents and the goods themselves to the purchaser. As to the second order, acknowledgment was made in

writing by the defendants of the receipt of the order and acceptance thereof by the defendants, and in such acceptance there was no reference whatever to any such limitation. Under such circumstances I do not think there is anything in the point that the plaintiff was called upon within three months to make claim for damages. The court submitted to the jury the question as to whether or not the plaintiff, under the circumstances, acted with reasonable diligence in asserting its claim. These claims were, in fact, asserted after the expiration of the three months.

Claim is also made by the appellants that special damages were improperly allowed to be passed upon by the jury. The case was here on a former appeal and a reversal was had mainly upon the ground that no special damages were alleged in the complaint. (205 App. Div. 358.) Since the reversal of the former appeal the complaint was amended, and apparently the objection raised by this court upon that appeal was met and cured by such amendment.

The judgment and order appealed from should be affirmed, with costs.

CLARKE, P. J., FINCH and MARTIN, JJ., concur; SMITH, J., dissents.

Judgment and order affirmed, with costs.