*P1ige, J-
 

 The counsel for the appellant in-bists, that the sale of the goods in question was by sample; and that such sale implied, on the part of the vendor, a warranty that the bulk of the goods corresponded in fineness with the sample; and that the appellant is entitled to recover the entire value of the goods, together with all moneys paid for freight, insurance, commissions, cartage, &c., as damages for the breach of the contract of warranty.
 

 Caveat emptor
 
 is an ancient rule *of the common law, and stands in contradistinction to the rule of
 
 caveat venditor
 
 of the civil law. An implied warranty of title, on a sale of chattels, is common to both the common and civil law; but in regard to the responsibility of the seller to answer for the quality or goodness of the articles sold, there exists between these two systems of jurisprudence an irreconcilable disagreement. According to the civil law, a sound price implies a warranty of the soundness of the article sold. By the common law, the vendor is not bound to answer to the vendee for the ..quality or the goodness of the articles sold, unless he expressly warrants them to be sound and good, or unless he knew them to be otherwise, and hath used some art to disguise them, or unless they turn out to be different from what he represented them to the buyer; in other words, there must be either an express warranty, or fraud, to make the vendor answerable for the quality or goodness of the articles sold. (2 Bl. Com.
 
 *78
 
 451; 2 Kent Com. 479;
 
 Seixas
 
 v.
 
 Wood,
 
 2 Caines 48;
 
 Swett
 
 v.
 
 Colgate,
 
 20 Johns. 196.)
 

 This principle was emphatically asserted in the cases of
 
 Chandelor
 
 v.
 
 Lopus
 
 (Cro. Jac. 4) and of
 
 Parkinson
 
 v. Lee (2 East 315). And Justice Kent, in
 
 Seixas
 
 v. Wood, says, that these decisions are two centuries apart, and the intermediate cases are to the same effect. In
 
 Chandelor
 
 v.
 
 Lopus,
 
 it was determined, in the court of exchequer, that for selling a jewel which was affirmed to be a bezoar stone, when it was not, no action lay, unless the defendant knew it was not a bezoar stone, or had warranted it to be one. In
 
 Parkinson
 
 v.
 
 Lee,
 
 decided in 1802, all the judges agreed, that the rule of
 
 caveat emptor
 
 applied to the sale of all kinds of commodities; that without an express warranty by the seller, or fraud on his part, the buyer must stand to all losses arising from latent defects, and that there v/as no instance in the English law of a contrary rule being laid down. In that case, Grose, J., says, that before the case of
 
 Stuart
 
 v.
 
 Wilkins
 
 (1 Doug. 20, K. B., in 1778), “it was a current opinion, that a sound price given for a horse was tantamount to a * warranty of soundness; but when that came to be sifted, it was found to be so loose and unsatisfactory a ground of decision, that Lord Mansfield resisted it, and said, there must be an express warranty, or fraud in the seller, in order to maintain the action.” In
 
 Parkinson
 
 v.
 
 Lee,
 
 there was an express warranty that the bulk of the hops purchased by the plaintiff corresponded with the sample by which they were sold; it turned out, that although the bulk of the commodity agreed with the sample, yet there was a latent defect existing in the hops, unknown to the seller, and without fraud on his part, but arising from the fraud of the grower from whom he purchased; and it was held unanimously, by all the judges, that the law did not raise an implied warranty that the hops were merchantable. On the argument of that case, the counsel for the plaintiff
 
 *79
 
 pressed upon, the court the doctrine, that in every contract of sale of chattels, where a fair price was paid, there was an implied warranty that the commodity sold should be in a merchantable condition, at the time of the sale, This doctrine the judges unanimously rejected, and they distinctly and emphatically re-asserted the common-law rule of
 
 caveat em/ptor,
 
 in all its integrity. The decision in this case, as I understand it, rejected the whole doctrine of implied warranty in regard to the quality or goodness of the articles sold, as inapplicable to any case of an executed contract of sale.
 

 The decision of
 
 Parkinson
 
 v.
 
 Lee
 
 was in 1802. Since the decision of that case, the common-law judges at Westminster Hall have manifested a strong disposition to borrow from the civil law its doctrine in relation to sales of chattels.- Departing from the stern policy of their predecessors, in resisting the encroachments of the civil law, and impelled by a new zeal for that system of jurisprudence, they have, step by step, introduced into the English system of the common law, various modifications of the civil-law doctrine of implied warranties on sales of chattels. Thus, we find, that in
 
 Hibbert
 
 v.
 
 Shee
 
 (1 Camp. N. P. 113, in 1807) and in
 
 Gardner
 
 v.
 
 Gray
 
 (4 *Camp. 144, in 1815), Lord Ellenboeough recog- r * nised the principle, that a sale by sample im- ^ plied a warranty that the bulk of the goods corresponded in quality with the sample. (See
 
 Lorymer
 
 v.
 
 Smith,
 
 1 B. & C. 1, in 1822;
 
 Parker
 
 v.
 
 Palmer,
 
 4 B. & Ald. 337, in 1821.) And in
 
 Jones
 
 v.
 
 Bowden
 
 (4 Taunt. 847, 852, in 1813), the English common pleas decided, that a warranty of soundness was implied from the usage of trade. In
 
 Laing
 
 v.
 
 Fidgeon
 
 (6 Taunt. 108, in 1815), the same court held, that in all contracts for the sale of manufactured goods, by the manufacturer, a warranty was implied that the goods were merchantable, (s. c., 4 Camp. 169.) And in a great number of subsequent cases, the English common-law courts advanced still
 
 *80
 
 further in their departure from the common law, and held, that in every sale, without any express warranty, there was an implied warranty that the goods were merchantable, and if.sold for a particular purpose, that they were reasonably fit and proper for such purpose.
 
 (Gardner
 
 v.
 
 Gray,
 
 4 Camp. 144, in 1815;
 
 Bluett
 
 v.
 
 Osborn,
 
 1 Stark. 384, in 1816;
 
 Jones
 
 v.
 
 Blight,
 
 5 Bing. 533, in 1829;
 
 O’Kell
 
 v.
 
 Smith,
 
 1 Stark. 107, in 1815;
 
 Shepherd
 
 v.
 
 Pybus,
 
 3 M. & G. 867, in 1842;
 
 Brown
 
 v.
 
 Edgerton,
 
 2 M. &
 
 G.
 
 279, in 1841;
 
 Olivant
 
 v.
 
 Bayley,
 
 5 Ad.
 
 &
 
 E. 288, in 1843.)
 

 In this state, we have in several cases applied the civil-law rule of
 
 caveat venditor
 
 to sales by sample; this is the only inroad we have made upon the common-law rule of
 
 caveat emptor;
 
 and this exception to the general rule, Justice BroNSON says, “stands upon no principle.” (1 Denio 386.) But our courts have as yet only applied the doctrine of implying a warranty on a sale by sample, that the bulk of the goods equals in quality and goodness the sample exhibited, to sales of cotton packed in bales. The supreme court refused to extend the doctrine to a sale of Italian hemp packed in bales.
 
 (Salisbury v. Stainer,
 
 19 Wend. 159.) And the application of the doctrine is limited to sales where the purchaser has no °PP°rtmiity *inspectiug the article purchased.
 
 (Boorman
 
 v.
 
 Jenkins,
 
 12 Wend. 576;
 
 Salisbury
 
 v.
 
 Stainer,
 
 19 Id. 159.)
 

 Several of the cases of sales of packed cotton by sample, where the doctrine of implying a warrant has been applied by our courts, were clear cases of an express warranty. This was the character of the case of
 
 The Oneida Manufacturing Co.
 
 v.
 
 Lawrence
 
 (4 Cow. 440), which was the case in the supreme court in which the doctrine of implying a warranty on a sale by sample was expressly adopted. In that case, the seller presented the agent of the purchaser with samples, declaring that they were drawn from the bales in his warehouse, and that it
 
 *81
 
 was good upland cotton, and that those were true samples. The only case, I believe, in the court of last resort, in which this doctrine has been recognised, was the case of
 
 Waring
 
 v.
 
 Mason
 
 (18 Wend, 432); and that also was a plain case of an express warranty. The plaintiff there agreed to purchase, if the cotton was equal to the samples exhibited; and the agent of the defendants sold to the plaintiffs, on this condition. This was an agreement, or, in other words, an express warranty, that the bulk corresponded in quality with the sample. Any representation, or express affirmation, that the bulk of the commodity sold is equal in quality to the sample exhibited, or that the sample is a true specimen of the bulk, presents the question of an express warranty. (19 Johns. 290; 4 Cow. 442.) Every exhibition of a sample to the purchaser, at the time of the sale, does not,
 
 per se,
 
 make a sale by sample; there must be, Chancellor Walworth says, an agreement to sell by sample, or, at least, an understanding of the parties, that the sale is to be a sale by sample. (18 Wend. 434, 436.) The mere exhibition of a sample, at the sale, amounts only to a representation that the sample exhibited has been taken from the bulk of the commodity offered for sale, in the usual way. (18 Wend. 434.)
 
 [1]
 

 The sale of provisions for domestic use is not an exception to the general rule of
 
 caveat emptor.
 
 The remedy of the purchaser, where the provisions turn out to be unwholesome, *is given on the ground of the knowledge of the unsoundness by the seller, which the law presumes, and not on an implied warranty that the provisions are wholesome.
 
 (Moses
 
 v. Mead, 1 Denio 378;
 
 Van Bracklin
 
 v.
 
 Fonda,
 
 12 Johns. 468;
 
 Emerson
 
 v.
 
 Brigham,
 
 10 Mass. 197, 202; 3 Bl. Com. 165.)
 
 [2]
 
 Where provisions are sold as merchandise, and not for immediate consumption by the purchaser, there
 
 *82
 
 is no implied warranty of nnsonndness. (1 Denio 378; 10 Mass: 197.)
 
 [3]
 

 Executory contracts of sale do not depend on the same principles, as executed contracts of sale; the doctrine of implied warranty has properly no application to the former. Where a contract is executory, that is, to deliver an article, not defined at the time, on a future day, whether the vendor has, at the time, an article of the kind on hand, or it is. afterwards to he procured or manufactured, the contract carries with it ah obligation that the article shall be merchantable, at least, of medium quality or goodness. If it comes short of this, the vendee may rescind the contract and return the article, after he has had a reasonable time to inspect it. He is not bound to receive or pay for it, because it is not the tiling he agreed to purchase.
 
 (Howard
 
 v.
 
 Hoey,
 
 23 Wend. 351-2;
 
 Hart
 
 v.
 
 Wright,
 
 17 Id.
 
 277;
 
 2 Kent Com. 480;
 
 Chanter
 
 v.
 
 Hopkins,
 
 4 Mees. & Welsb., Exch. 399, in 1838, per Lord AbiNger, C. B., 404.)
 
 [4]
 
 But if the article is, at the time of the sale, in existence and defined, and is specifically sold, and the title passes
 
 in prsesenti
 
 to the vendee, the transaction amounts to an executed sale; and although there is no opportunity for inspection, there will be no implied warranty that the article is merchantable.
 
 (Howard
 
 v.
 
 Hoey,
 
 23 Wend. 351;
 
 Hart
 
 v.
 
 Wright,
 
 17 Id. 269; s. c. 18 Id. 449;
 
 Waring
 
 v.
 
 Mason,
 
 18 Id. 433; per Chancellor.)
 

 Where the sale is executory,- if the goods purchased are found, on examination, to be unsound, or not to answer the order given for them, the purchaser must immediately return them to the vendor, or give him notice to take them back, *and thereby rescind the con- or he will be presumed to have acquiesced
 
 *83
 
 in the quality of the goods. (2 Kent Com. 480;
 
 Fisher
 
 v.
 
 Samuda,
 
 1 Camp. N. P. 190;
 
 Hopkins
 
 v.
 
 Appleby,
 
 1 Starkie N. P. 477;
 
 Milner
 
 v.
 
 Tucker,
 
 1 C. & P. 15; 23 Wend. 352.)
 

 The cases in our courts, in which the doctrine of implied warranty on a sale by sample has been advanced, are
 
 The Oneida Manufacturing Co.
 
 v.
 
 Lawrence
 
 (4 Cow. 440),
 
 Andrews
 
 v.
 
 Kneeland
 
 (6 Id. 354),
 
 Gallagher
 
 v.
 
 Waring
 
 (9 Wend. 20, s. c. 18 Id. 425),
 
 Beebe
 
 v.
 
 Robert
 
 (12 Id. 413), and
 
 Boorman
 
 v.
 
 Jenkins
 
 (Id. 566). These were all cases of sales of cotton packed in bales. The decision in each of them was put upon the assumed ground that the purchaser had no opportunity to examine the bulk of the commodity sold. The first case, that of
 
 The Oneida Manufacturing Co.
 
 v.
 
 Lawrence,
 
 was, as we have seen, a case of an express warranty; it was, therefore, unnecessary to place the decision of that case on the ground of an implied warranty. Ch. J. Savage, in that case, advanced the doctrine of implying a warranty on a sale of packed cotton, on the authority of the case of
 
 Rose
 
 v.
 
 Beattie,
 
 decided by the constitutional court of South Carolina. (2 Nott & McCord 540-1.) That case was no authority in this state for the decision of Ch. J. Savage, for the reason that, in South Carolina, the civil-law rule that a sound price implies a warranty of soundness, prevailed. Ch. J. Savage assumed that there was no opportunity of inspecting cotton packed in bales, and held, adopting the precise language of Justice Nott, in
 
 Rose
 
 v.
 
 Beattie, “
 
 that every sale of packed cotton must be considered in the nature of a sale by sample, which (he says) amounts to a warranty that the whole bulk shall compare with the specimen exhibited.” The subsequent cases in the supreme court of this state were decided upon the authority of the case of
 
 The Oneida Manufacturing Co.
 
 v.
 
 Lawrence.
 

 The supreme court, in all these cases, assumed that there was no opportunity to inspect the cotton, not be
 
 *84
 
 cause the inspection was impracticable, but because it was inconvenient and expensive. (12 Wend. 419, 575.) The evidence in the case of
 
 Boorman
 
 v.
 
 Jenkins
 
 (12 Wend. 569) shows how unfounded was this assumption. In that case, an experienced cotton-broker testified, that, by cutting a rope, cotton could be drawn from the centre of the bale, and that this was done, when it was suspected that the cotton had been fraudulently packed. In
 
 Hyatt
 
 v.
 
 Boyle
 
 (5 Gill & Johnson 110, in 1833), the court of appeals of the state of Maryland held, that the exception to the rule of
 
 caveat emptor
 
 applies only to cases where an examination is, at the time of the sale, morally speaking, impracticable. Dorsey, J., in that case, says — “The mere fact of the inspection being attended with inconvenience, is not equivalent to its impracticability. ' If the purchaser desire to avoid it, and yet obtain the protection it would afford, he must do so by exacting from the vendor an express warranty of quality.” Justice Cowen, in
 
 Hart
 
 v.
 
 Wright
 
 (17 Wend. 274), expressed an unqualified approbation of the remarks of Judge Dorsey. There is, certainly, no impracticability in inspecting cotton packed in bales, although there may be both inconvenience and expense. It is to be regretted, that any disposition should, at any time, have been manifested by our courts to relax the rule of
 
 caveat emptor,
 
 and to imply a warranty, where none was either actually made or intended by the parties. It would have been by far the wisest and best policy, to have adhered strictly to the rule, that the seller, in the absence of fraud or an express warranty, was not answerable for latent defects.
 

 The ablest jurists of England and this country have earnestly and eloquently defended the wisdom of the common-law maxim of
 
 caveat emptor.
 
 (17 Wend. 275, Cowen, J.; 18 Wend. 454-5, Ch. Walworth; 1 Denio 386, Bronson, J.; 2 Kent Com. 480, note; 3 Rawle 44, Ch. J. Gibson.) Ch. J. Gibson says, in
 
 Borrekins
 
 v.
 
 *85
 

 Bevan
 
 (3 Rawle 44), “ I prefer the rule of the common law, because it seems to be more convenient and just, than the rule of the civil law; more convenient, because it furnishes a plain test of *the vendor’s liability, f ^ in two words, ‘warranty or fraud/ and more *- just, because it pretends not to release the vendee from his bargain, where it happens to be a bad one.” And in
 
 McFarland
 
 v.
 
 Newman
 
 (9 Watts 86), he says, “ No more should be required of parties to a sale, than to use no falsehood, and to require more of them, would put a stop to commerce itself, by driving every one out of it, by the terrors of endless litigation.” Justice Richardson, in
 
 The Com’rs. of Highways
 
 v.
 
 Newbury Dist.
 
 (2 McCord 407, Constitutional Ct. of S. C.), says, speaking of the rule of
 
 caveat venditor,
 
 as extended in South Carolina, to every species of property, thus, “ we find practically established in judicial proceedings, a species of eminent domain to make or break contracts.”
 

 The rule of
 
 caveat emptor
 
 is eminently adapted to a commercial community; it encourages trade, by preventing actions against all in turn through whose hands the article of commerce has passed in a course of dealing. Large quantities of products, and articles of manufacture, are daily passing through the hands of
 
 bond fide
 
 purchasers and of agents, commission-merchants, consignees and factors; and to apply to these persons the principle of
 
 caveat venditor,
 
 would lead to endless litigation, and seriously embarrass the operations of trade. This rule creates obligations, where none were intended; it implies warranties, where none were actually made. The most just and convenient rule is, to confine the responsibility of the seller, in relation to the quality and goodness of the articles sold, to the case of an express warranty or fraud. This rule will effectuate the intention of the parties, and will not surprise the seller with responsibilities he never intended to assume. Where die article sold is equally accessible to both parties, and
 
 *86
 
 its quality equally unknown to both, there can be neither justice nor propriety, in implying a warranty on the part of the seller against latent defects. It is more just, to require the purchaser to apply his *attention to those particulars which are within the reach of his observation and judgment, and the vendor to communicate all defects within his knowledge, and not apparent on inspection. (1 Fonb. Eq. 880,
 
 n)
 
 And if the purchaser does not wish to run the risk of latent defects, to require him to provide himself an indemnity against such defects, by exacting an express warranty from the vendor. When such warranty is required, the vendor will be at liberty to decide for himself whether he will enter into a contract of warranty or not.
 
 [5]
 

 As for myself, I feel indisposed to multiply the exceptions, if any now exist, to the rule of
 
 caveat emptor,
 
 and disinclined to relax the rule any further than I am compelled to do, by the strict letter of the decisions of our courts. In my opinion, the sale of the brown cotton sheetings, in the present case, was not, under the principles above advanced, a sale by sample. And I do not think, that the doctrine of implying a warranty on a sale by sample should be applied to a sale of sheetings, although packed in bales. But if the doctrine is applicable, there is no evidence in this case, from which an agreement or understanding of the parties that this was to be a sale by sample can be inferred. The purchase was made from Stone by a broker, acting as agent for the plaintiff. The proof fails to show that Stone had any knowledge of the Mexican tariff, or of the difference between the Spanish and American inch, or that the goods were destined for the Mexican market; and there is no evidence, that Stone was told, by either the plaintiff or the broker, that the goods to be purchased must count thirty-one threads in the fourth part of a Spanish
 
 *87
 
 square inch. And it is in proof, that it is not unusual for domestic goods to vary one or two threads, in the quarter of an inch. The goods in question averaged from twenty-eight to twenty-nine threads to the fourth of a Spanish square' inch. It is proved, that the threads could not be counted without a glass, and that Stone had no glass at the time of the sale. The sample which the broker swears *the plaintiff selected was left with the plaintiff, and it does not appear, that it was returned to Stone to enable him to compare it with the goods delivered, in order to ascertain whether their fineness corresponded with each other. There was no affirmation by Stone, that the sample selected was a true sample of the goods delivered, nor that the goods would count thirty-one threads to every one-fourth part of a Spanish inch, and no promise on his part to deliver goods of that degree of fineness. The plaintiff did not make it a condition of his accepting the goods, that they should correspond in fineness with the sample exhibited. One of the samples which the broker exhibited to the plaintiff, the broker cut himself from an open sample bale, in Stone’s store. This bale was one of the twenty which Stone had on hand, at the time of the negotiation, and which he delivered for the plaintiff, at Thorne’s packing warehouse. If the sample selected was the one cut from the open sample bale, it is altogether probable, that the goods delivered did correspond with the sample. The variation of the number of threads, as counted by the plaintiff, and in Mexico, may be accounted for by the different character of the glasses used in New York and in Mexico. The variation was no greater than usually occurs in every bale of this kind of goods. The case fails to show that the sample exhibited and selected was the one furnished by Stone; and it also signally fails to show, that it was exhibited by Stone as a specimen of the bulk of the goods he had on hand, and of the goods he was able to procure, and would deliver, to
 
 *88
 
 fill the plaintiff’s order. The broker acted only as the agent of the plaintiff; he was not the common agent of both parties. To make a sale by sample, there must be an agreement to sell by sample, or, at least, an understanding of the parties that the sale is to be by sample, from which an agreement can be inferred.
 
 (Waring
 
 v.
 
 Mason,
 
 18 Wend. 433-4-6.) There is not sufficient evidence in this case, to authorize an inference that the parties here agreed that the sale should be by sample.
 

 But if the sale was a sale by *sample, no warranty can be implied that the bulk of the goods should equal in fineness the sample, because the plaintiff had an opportunity to inspect the goods. The plaintiff could have examined the twenty bales first delivered, when in Stone’s possession, or while they were at Thorne’s warehouse. At Thorne’s warehouse, there was neither any difficulty, inconvenience, nor expense, in inspecting the goods. Every bale was there opened, and the goods separated and repacked; while this process was going on, the goods could and ought to have been examined. If it is a good ground of objection, that this was after the delivery, and, therefore, after the title passed, I answer, that the inspection was practicable, and the plaintiff should, therefore, have examined the goods, to ascertain for himself whether they were of sufficient fineness before, or at the time of, the delivery at Thorne’s, and before he accepted them. In sales of packed cotton, it is held, there is no opportunity of inspecting the commodity, because this cannot be done without breaking up and repacking the bales. (12 Wend. 419, 574-5; 4 Cow. 444.) In this case, the plaintiff, at the time of the sale, intended to break up the bales and repack the goods, and he had them delivered at Thorne’s warehouse for that purpose.
 

 As to the twenty-three bales received from Boston, if the order required goods of any particular fineness to be furnished, the contract of sale was executory. It was a
 
 *89
 
 contract to deliver goods, not specifically defined at the time — indeterminate things, any twenty-three bales of brown cotton sheetings. The contract of sale was, therefore, necessarily, as to the number of bales which Stone had not on hand, executory; and being so, the, plaintiff, after having had a reasonable time, after the delivery of the twenty-three bales, to inspect- the goods, if they did not answer his order, he should have returned them to Stone, or given him notice to take them back; having failed to do so, he will be presumed to have acquiesced in the quality of the goods. Every one of the twenty-three bales was opened, and the goods separated and ^repacked at Thorne’s. They were at Thorne’s several days; and, while there, the plaintiff had sufficient time and ample opportunity to examine them, and to ascertain, before they were shipped, whether they corresponded with the order or not.
 
 [6]
 

 In
 
 Vanderhorst
 
 v.
 
 McTaggert
 
 (2 Bay 498, Constitutional Court, S. Carolina, in 1803), it was held, that on sales of rice or of any other staple article of South Carolina, it was the duty of the purchaser to examine the article, before it was shipped, and that by a neglect so to do, he tacitly admits the quality to be good, and takes the risk on himself. As to the twenty-three bales, the sale cannot, under any view which may be taken of the evidence, he regarded as a sale by sample. A sale by sample is where certain determinate commodities in existence, and in the seller’s possession, or under his control, at the time of the sale, are specifically sold by samples taken from the bulk of such commodities. The twenty-three bales were not in Stone’s possession, nor under his control, at the time of the sale; nor were they specifically sold, nor did any property in these identical bales pass at the time of the sale to the plaintiff. I am also inclined to believe, that the samples selected by the plaintiff ought to be regarded
 
 *90
 
 as a fair specimen of the bulk of the goods delivered. It will be remembered, that Stone, the seller, had no knowledge that the goods were to be sent to the Mexican market, nor any knowledge of the Mexican revenue laws. It is in evidence, that goods like those purchased usually vary one or two threads in the space of the quarter of an inch. With this fact, the plaintiff, being a dealer in these goods, must be presumed to have been acquainted. The goods delivered actually averaged twentjr-eight to twenty-nine threads to the fourth part of a Spanish square inch. There is no evidence to show that, in the New York market, there is any difference in the price or value of cotton sheetings which count twenty-eight, or twenty-nine, or thirty-one threads within the space of the fourth part of a Spanish square inch.
 

 In Sands v Taylor
 
 *(5 Johns. 395), the plaintiff sold to the defendant, a malster and brewer, a cargo of "Virginia wheat, which was known to be Southern wheat, and which is always more or less heated, but not so as to injure it, when manufactured into flour, although it renders it unfit for malting. A sample, taken in the usual manner from the cargo, was exhibited to the defendant, before the purchase, which, on experiment, was found to malt. It was held, that the sample was a fair specimen of the quality of the cargo. Spencer, J., says, that the exhibition of the sample did not warrant against the fact that the cargo was heated, which prevented its malting. He said, that this was a fact with which the defendant must be presumed to be acquainted, “ for the law will presume every dealer in articles brought to market, acquainted with all the circumstances usually attendant on cargoes composed of those articles.”
 

 If the sample in this case is to be regarded as a fair specimen of the goods purchased, then there is no breach of any assumed warranty that the bulk of the twenty bales should equal the sample in fineness, nor
 
 *91
 
 any violation of the obligation implied in the executory contract to sell twenty-three bales; that goods of a particular fineness should be delivered, and the delivery of the twenty-three bales was a substantial compliance with the order given for them. Stone was guilty of no fraud or false representation, and he made no express warranty of any -kind. My opinion is, and such is the opinion of the court, that the plaintiff made out no cause of action, and that he was properly nonsuited. The judgment of the supreme court must, therefore, be affirmed.
 

 Judgment affirmed.
 
 [7]
 

 [1]
 

 Brown
 
 v.
 
 Lewis, 19 Barb. 574.
 

 [2]
 

 Hyland v. Sherman, 2 E. D. Sm. 234; Burch
 
 v.
 
 Spencer, 15 Hun 504.
 

 [3]
 

 Divine
 
 v.
 
 McCormick, 50 Barb. 116; Goldrich v. Ryan, 3 3 E. D. Sm. 324.
 

 [4]
 

 See Leonard
 
 v.
 
 Fowler, 44 N. Y. 289; Conrad
 
 v.
 
 Dater, 4 Am. L Times 42.
 

 [5]
 

 See Murray
 
 v.
 
 Smith, 4 Daly 277.
 

 [6]
 

 See Barnard
 
 v.
 
 Kellogg, 10 Wall. 383; s. c. 6 Bl. C. C. 279.
 

 [7]
 

 A sale of goods by sample, without more, is not a warranty of quality ; it merely imports that the goods to he delivered shall follow its kind, and that they shall he merchantable. Boyd
 
 v.
 
 Wilson, 83 Penn. St. 319. Nor does a sale hy sample,' for a particular purpose, without fraud, import a warranty of quality. Altoona Iron Works
 
 v.
 
 Axle Co., 6 W. N. C. 271. All that is, ordinarily, implied hy the exhibition of a sample is, that it has been fairly taken from the hulk of the commodity. Murray
 
 v.
 
 Smith, 4 Daly 477. And see Loomis
 
 v.
 
 Cromwell, 8 Law Rep. 546; Willings
 
 v.
 
 Consequa, Pet. C. C. 302; Ramsdell
 
 v.
 
 United States, 2 Court of Claims 508.