FRANCIS M. SHAW *et al.*, Respondent, *v.* JOHN C. LIGHT-HOUSE, Appellant.

*Supreme Court, Fifth Department, General Term, October 19, 1889.*

1. *Sale. Executory.*—In cases of executory contracts for the sale and delivery of personal property, of a particular description, without warranty as to quality, the remedy of the vendee, to recover damages on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property.

2. *Same. Warranty.*—But, *it seems*, when in an executory contract for the sale of goods there is a warranty as to the quality, the vendee, on receipt of the article and subsequent discovery that it is defective in quality, is not bound to return, or offer to return, the property, but may retain and use it, and have his action for damages upon the contract of warranty.

Appeal from a judgment entered upon a verdict rendered at the Monroe circuit in the plaintiff's favor for the sum of $1,200 damages, together with $249.30 costs, and from an order of the Monroe special term denying the defendant's motion for a new trial.

*Walter G. Hubbell*, for appellant.

*W. E. Edmunds*, for respondents.

BARKER, P. J.—This action was brought to recover damages for the breach of a written contract, by the terms of which the appellant agreed to sell and deliver in the city of Boston to the respondents a quantity of scrap leather.

The defendant contends that upon the trial parol evidence was received to contradict and vary the terms of the written

agreement, and for this reason the judgment should be reversed, and a new trial granted. We are unable to find in the record any exception which fairly presents this question. The appellant, a tanner, doing business in the city of Rochester, had a contract with the United States government for the making of leather mail bags, which were manufactured at the appellant's establishment in the city of Rochester, mostly from leather which he tanned. When the leather was finished, and ready to be used for that purpose, a side of leather, which was one-half of the entire hide as taken from the animal, was spread on the cutting table, and a pattern for a mail bag laid thereon, and so much of the side of leather as was suitable for any part of a bag was cut out, and the remnants were called, in the trade, " mail bag scrap," which had a market value, and was mostly used for soles for boots and shoes. Before any pieces were cut out from a side of leather for a mail bag, the back line of the side was straightened and brought to a true line. In doing this, sometimes, narrow strips or strings were cut off, varying, in length, from six to twenty-four inches. When all of the side suitable for mail bgas was cut out, the remnants were removed from the table, and this refuse material was put in sacks and stored in the defendant's warehouse. The plaintiffs were manufacturers of shoes, doing business in the city of Boston. When the agreement was made, the defendant had a large amount of this class of stock on hand, not weighed. The contract recites that the purchaser had bought of the seller " his whole stock of mail bag scrap, not to exceed fifty tons, at the rate of fifteen and three-quarter cents a pound, delivered in Boston, * * * each shipment to be drawn on by sight draft with bill of lading attached."

The stock was shipped in separate car-load lots, and was paid for by the purchasers before the goods were received by them. They now insist that each shipment contained several sacks of pieces of leather not included in the contract, which were of much less value than the article known as

" mail bag scrap," and the evidence produced by them tended to show that the contents of those sacks was made up, in part at least, of straightenings, or strings, so called, and were not mail bag scraps within the meaning of that term as used in the contract.

On the trial the question was sharply contested whether all the pieces or remnants of a side of leather left after getting out the part suitable for a mail bag, was included in the term " mail bag scrap," or was limited to the large pieces so left, excluding strings or straightenings as before described. No objection was made by the defendants to any of the evidence on the ground that it tended to contradict the written contract. As to the kind and amount of property sold, the contract was definite and certain. The dispute is not as to the terms of the contract, but rather what was included within the meaning of the words used descriptive of the article sold. The plaintiff did not seek to change the contract so as to exclude from the purchase any article that would come within the term " mail bag scrap."

The learned counsel for the appellant insists that the court in effect ruled that parol evidence might be used to modify or contradict the written agreement, by refusing to charge this proposition, to wit : That the jury must find from the evidence in the case that the plaintiff purchased the whole stock of mail bag scrap not to exceed fifty tons belonging to the defendant.

If the defendant sought by this request to have the jury instructed that, by the terms of the written contract, the plaintiffs purchased all the mail bag scrap then owned by the defendant, not exceeding fifty tons, he was entitled to the instruction, for such was the plain meaning of the contract, unless the court had already informed the jury that such was the import of the agreement. I think he had in effect so instructed the jury before this request was made. It is unnecessary in this connection to repeat the portions of the charge referred to, as it cannot be doubted, after a

perusal of the same, that the jury must have understood that such was the meaning of the contract from the remarks of the court, referring to the nature and character of the agreement. It is manifest when the request to charge is read in connection with the charge as made, to which the defendant took no exception, that the purpose of the appellant in making the request to charge was to secure a ruling from the court that the term mail bag scrap included strings and straightenings as claimed by the defendant.

It is unnecessary to pursue this question further, as we think the plaintiffs by their action, on receipt of the stock shipped to them, are precluded from claiming that the same was not of the kind and quality purchased. The entire amount of stock shipped was about thirty-eight tons, in three car-loads, the first car being started from Rochester, May 7th, and the third the last of June or the first of July following. By the plaintiff's special direction the last car-load was consigned to them at Boston, where it was received by them. At the time the contract was made, the stock was sacked and in store in the defendant's building, which one of the plaintiffs and their agent visited with a view of ascertaining the quality of the stock, and they opened and inspected the contents of some of the bags. These persons testified as witnesses that they then discovered that some of the sacks were filled with pieces of leather which were not mail bag scrap, and, as they understood from statements made by a person in the employ of the defendant, were not to be shipped under the contract.

The plaintiffs claim, and their evidence tended to show that ninety-five of the sacks shipped, containing about ten tons in all, contained strings and pieces of leather, not "mail bag scrap" within the meaning of that term as used in the contract. It was also proved on the trial that the material in those sacks was worth less in market value than the contract price mentioned in the contract, and was also of less value than the material known as mail bag scrap.

The rule of damages adopted on the trial was the difference between the value of the goods in view of their actual quality and the market value of goods answering the description of those purchased.

When the first car-load was received by the plaintiffs and unloaded at their factory one of the plaintiffs personally inspected the goods, and he discovered that several bags were filled with " chips and stuff," and they were weighed and stored in a room separate and apart from the sacks which contained mail bag scrap proper. This entire car-load was afterwards sold by the plaintiffs to a manufacturer and shipped to Salem, Massachusetts, who, upon inspection of the goods, returned to them two tons and used the balance in his business. On the receipt of the second car-load some of it was used by the plaintiffs in their own factory, and some of it sold to third parties.

The evidence tended to show that some of this consignment was not " mail bag scrap," but was refuse of very little value; but it is admitted that most of the stock which was condemned was used by the plaintiffs in their business and the rest consumed as fuel.

When the third car-load was received in Boston it was forwarded unopened to Rowley, a place fifty miles distant. On its arrival there the goods were inspected by the plaintiffs, and they discovered that several sacks were filled with refuse material, not of the kind and quality purchased. All of this car-load was either sold or used by the plaintiffs, and their proofs tended to show that there were ten or eleven thousand pounds of rejected goods.

Upon these undisputed facts, the legal proposition is presented, whether the plaintiffs, by not returning or offering to return the goods, after discovering that the goods were not of the kind or quality purchased, waived all objections on account of defects of quality. We think they did, and for that reason failed to make out a cause of action. It was their duty, in view of the facts and features of this transac-

tion, to accept the goods as answering the contract, or on inspection to return each shipment as rejected by them because the quality was defective, and not such as was contracted for. The contract of sale was executory, and no title passed to the purchasers on the execution and delivery of the written agreement. After delivery of the contract the goods owned by the defendant and on hand at that time of the kind mentioned therein were to be separated from the entire stock then on hand, and delivered to the plaintiffs, the freight prepaid to the city of Boston. The sale was not limited to the contents of a particular number of sacks pointed out and designated by a mark, nor did the contract exclude from the purchase pieces of leather which would answer the description of mail bag scrap, although at the time of the sale they were in sacks mingled with scraps and remnants, not mail bag scrap within the meaning of that term.

The contract contained no warranty as to the quality of the property; therefore a breach of the contract was not a breach of warranty, but a mere non-compliance with the contract that the defendant had agreed to fulfil.

In cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee, to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent on his part that the contract has been performed. The delivery of the property corresponding with the contract is a condition precedent to the vesting of the title in the vendee, the parties understanding that the vendee is not bound to accept the property tendered, except upon this condition. This the vendee is to determine upon the receipt of the property. There is no intention that a defective article should be accepted, and that the ven-

dee should rely upon some kind of a covenant for his indem-
nity.   The latter is not bound to receive and pay for a thing
that he has not agreed to purchase; but if the thing pur-
chased is found on examination to be unsound, or not to an-
swer the order given for it, he must immediately return it to
the vendor or give him notice to take it back and thereby
rescind the contract, or he will be presumed to have ac-
quiesced in its quality.   He cannot accept the delivery of
the property under the contract, retain it after an opportunity
of examining its quality and recover damages, if it be not of
the quality or description called for by such contract.

These are elementary propositions and are found stated in
Reed *v.* Randall, 29 N. Y. 358; see also, Fisher *v.* Samuda,
1 Camp. 190; Hargus *v.* Stone, 1 Seld. 73; Shields *v.* Pet-
tee, 2 Sandf. 262.

When in an executory contract for the sale of goods there
is a warranty as to the quality of the goods contracted for,
the vendee, on receipt of the article and subsequent discovery
that it is defective in quality, is not bound to return or offer
to return the property, but may retain and use the same, and
have his action for damages upon the contract of warranty.
Such was the case of Day *et al. v.* Pool *et al.*, 52 N. Y. 416,
where the contract was for the sale of an article known as
rock candy syrup, "that could not crystallize or the sugar
fall down," in its use.   The goods were shipped to and re-
ceived by the purchasers in small parcels at different times,
and, before it was all received, they discovered that the syrup
did not answer the warranty or recommendation, but used
the same, and it was held that the warranty survived the
delivery, acceptance and use of the goods by the buyer.

The case at bar and the material facts are similar to the
case of Sprague *v.* Blake, 20 Wend. 61, and the principle
upon which that case was decided has never been questioned.
The proof there was that the defendant had agreed to pur-
chase the whole of a crop of wheat belonging to the plaintiff,
estimated to amount to between three and four hundred

bushels, to be delivered at a place mentioned, for which the vendee agreed to pay a stated price. By the terms of the agreement the wheat was to be merchantable. After a portion of the wheat was delivered it was agreed that the balance should be delivered at another point, and the plaintiffs delivered at that point a quantity of wheat, which was accepted and not paid for. The purchaser used the wheat. In an action for the price of the wheat last delivered, the purchaser attempted to set up the inferior quality of the wheat, as a partial defense, and offered to prove its real value, and the evidence was rejected. A verdict for the contract price was sustained, the court laying down the proposition that the buyer must refuse to accept the property at the time of its delivery, or, if its inferiority be subsequently discovered, he must return it to or require the purchaser to take it back.

In Hargous *v.* Stone, *supra*, it was held that if the contract was an executory one, to furnish goods of a particular description, the purchaser was bound to examine them, when received and opened, and to return them if the quality was not such as was promised. Not having done so, he waived all objections on account of defects of quality.

In the contract before us, the thing sold was " mail bag scrap," as that article was known in the trade. It was simply an agreement to sell so much of mail bag scrap as he had then on hand, not exceeding fifty tons. The seller shipped the goods as answering the description " mail bag scrap," and if the purchasers, on receiving the goods, discovered that any portion of the shipment was not of the kind of goods purchased, and they were unwilling to receive the same as complying with the contract, it was their duty to have returned the same, or notified the seller, and, not having done so, they deprived themselves of the right to claim damages on account of inferiority of the article.

The learned judge, who presided at the trial, and who heard and denied the defendant's motion for a new trial, dis-

posed of the point now under consideration by citing Meagley *v.* Hoyt, 12 N. Y. State Rep. 357, as authority that the right of action survived the acceptance of the goods. We think that case not in point. There it was alleged by the buyer that the defendant warranted and agreed to sell tallow of a quality or grade known as " prime tallow ; " but, in violation of that agreement, they delivered an article which contained thirty per cent of foreign matter. The plaintiff recovered a verdict, which was sustained by the general term. Although the contract in that case was executory, it contained a warranty as to the quality, and belonged to the class of actions in which Day *v.* Pool, *supra,* is a leading one in this state.

We have examined with care the correspondence which took place between the parties concerning the third car-load before its receipt by the plaintiffs at Boston, and we find nothing in it which amounts to a warranty, or makes the case any different as to the rights of the parties than as the same stood before the correspondence was opened.

The judgment and order should both be reversed, and a new trial granted, with costs to abide event.

DWIGHT and MACOMBER, JJ., concur.