### STRAUSS v. SALZER et al.

(Supreme Court, Appellate Term.   April 10, 1908.)

**1. SALES—IMPLIED WARRANTY.**

A woolen merchant and importer, selling cloth not of his own manufacture to a tailor, does not impliedly warrant the quality or fitness thereof, even as to latent defects.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 747–754.]

**2. SAME—"LATENT DEFECTS."**

A defect in a roll of cloth sold, which consists of holes in the cloth, is not a latent defect, since it is easily discoverable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 747–754.
For other definitions, see Words and Phrases, vol. 5, p. 4013.]

**3. SAME—EXPRESS WARRANTY.**

A salesman of a woolen merchant and importer, in attempting to sell cloth to a tailor, said: "I have the best piece of cloth in the market, and I want you to have one, and I will send you one." The tailor replied that he had no immediate use for it, but told him to "send it in, and if it is good, I will put it away on the table." *Held*, that there was no express warranty of quality or fitness, but the contract implied that the buyer would examine the cloth and ascertain whether or not it was good.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 727–735.]

Appeal from Municipal Court, Borough of Manhattan, Tenth District.

Action by Hyman Strauss against Leopold Salzer and another, doing business under the firm name of the Bruner Woolen Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendants appeal.   Reversed, and new trial granted.

Argued before GILDERSLEEVE, P. J., and SEABURY and DAYTON, JJ.

Herman & Hirschman, for appellants.

Maurice Meyer, for respondent.

PER CURIAM.   It is difficult to see upon what theory this judgment can be sustained.   The plaintiff's own evidence shows the facts to be substantially as follows, viz.:   Plaintiff is a ladies' tailor, and defendants are woolen merchants and importers.   Either in December, 1905, or February, 1906—for plaintiff is uncertain of the date, while defendants are sure it was in December, 1905—defendants' salesman said to plaintiff:

"I have the best piece of cloth in the market, and I want you to have one, and I will send you one up."

Plaintiff replied that he had no immediate use for it, but told the said salesman "to send it in, and, if it is good, I will put it away on the table."   A day or two later the cloth was delivered to plaintiff.   This cloth was not manufactured by defendants, but imported by them from abroad.   Plaintiff paid for the goods in May or June, 1906.   The said cloth was placed, upon its delivery to plaintiff, upon the latter's stock table.   Thereafter, but on some date not given, plaintiff's wife cut off 13½ yards from said piece of cloth.   Thereafter, and in August, 1906, plaintiff cut off another 1½ yards from said roll of cloth.   The whole

of the 15 yards of said cloth so cut off were used for plaintiff's purposes. In September, 1906, for the first time, plaintiff examined the roll itself and found holes in it. He then complained to defendant, and offered to return the remains of said piece of cloth, and demanded the return of the purchase price, which was refused. Thereupon plaintiff brought this action, and recovered a judgment for $84.86 damages, and $14.67 costs. Defendant moved for a new trial, which motion was denied. From said judgment, and order denying the motion for a new trial, defendant appeals.

There is no evidence as to the cause of the holes in the cloth, or the time of the making of the same, except that an expert testified that in his opinion the damage had been done by some machinery in the rolling; but he also stated that it might have been done subsequent to the rolling by some sharp instrument. The proof, therefore, of the damage having been done previous to the delivery of the goods to plaintiff, is extremely slight. The cloth apparently lay on plaintiff's table from either December or February, until September, before plaintiff discovered the defects, although a very ordinary inspection would have shown the said defects, had they existed at the time of delivery. Defendants claim, without contradiction, that had the defects been discovered, and the cloth returned, within a reasonable time, defendants could have returned it to the house from which they purchased, but that it was too late to do so at the time plaintiff finally made his discovery and complaint. As above stated, defendants were not manufacturers of the cloth, and there is no implied warranty of quality or fitness, even as to latent defects, and the defects in question, if there were any, were not latent, but easily discoverable, as we have seen. It can hardly be claimed that there was any express warranty, as the statement of the defendant's salesman that "he had the best piece of cloth in the market" was at best a mere expression of opinion. It is evident that plaintiff so understood it, for he told the salesman "to send it in, and, if it is good, I will put it away on the table." This implies an intention to examine the cloth, and ascertain whether or not it was good, before "putting it away on the table." Instead of so examining it, plaintiff put it immediately on his table, subsequently used 15 yards of it, and finally, several months after the delivery of the cloth, examined it.

The judgment and order must be reversed, and a new trial granted, with costs to appellants to abide the event.