(85 Misc. Rep. 62)

### BONWIT, TELLER & CO. v. KINLEN.

(Supreme Court, Appellate Term, First Department. April 14, 1914.)

SALES (§ 273*)—WARRANTIES OF SELLER—SALES OF GOODS ACT.
    Under Sales of Goods Act (Laws 1911, c. 571) § 96, declaring that where the buyer makes known to the seller the purpose for which the goods are required, and relies on the seller's skill or judgment, there is an implied warranty that the goods shall be reasonably fit for such purpose, a retail seller of ladies' clothes impliedly warrants that they are reasonably fit for personal wear; and hence where the material of a suit disintegrated

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after three or four wearings and a waist spotted after being laundered, there was a breach of the implied warranty.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 772–776; Dec. Dig. § 273.*]

Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Bonwit, Teller & Co. against James E. Kinlen. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued January term, 1914, before LEHMAN, BIJUR, and PAGE, JJ.

Paskus, Cohen & Gordon, of New York City (Arthur B. Hyman, of New York City, of counsel), for appellant.

Charles J. Belfer, of Brooklyn (Julius S. Belfer, of Brooklyn, of counsel), for respondent.

PAGE, J. This action was brought by the plaintiff, a corporation engaged in business as a retail merchant dealing in ladies' wearing apparel, to recover for goods sold and delivered to the defendant's wife, and for certain alterations made in said goods. The purchase by the defendant's wife of a suit, a waist, and certain alterations in the suit, all for the agreed price set forth in the complaint and bill of particulars, was conceded. The waist was soiled when purchased, and when washed, prior to being worn, pink spots appeared upon it. Mrs. Kinlen on discovering this condition returned the waist to plaintiff, claiming that these spots showed latent defects in the material of the waist. She wore the suit but three or four times when what are described as "pulls and tears" showed in the suit. An expert in the manufacture of silk testified that these "pulls and tears" were the result of defects in the manufacture of the goods, and that by reason thereof the goods were not of the quality that would be made up into a suit selling at the price charged in this instance. The plaintiff's witnesses testified that these goods were examined prior to sale, and that the defects were not discovered. As the law was in this state prior to the passage of the "Sales of Goods Act" (Laws 1911, c. 571 [Personal Property Law] §§ 82–158), there would have been no implied warranty against latent defects in the goods; the plaintiff not being a manufacturer. Hargous v. Stone, 5 N. Y. 73, 87; Hoe v. Sandborn, 21 N. Y. 552, 78 Am. Dec. 163; Bartlett v. Hoppock, 34 N. Y. 118, 88 Am. Dec. 428; Whitman v. Jacobson, 119 N. Y. Supp. 246; Strauss v. Salzer, 58 Misc. Rep. 573, 109 N. Y. Supp. 734. But this rule of law has been changed by the Sales of Goods Act, supra.

"Section 96. Implied Warranties of Quality: Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: 1. Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not),

there is an implied warranty that the goods shall be reasonably fit for such purpose."

Thus the rule that heretofore obtained in this state as to purchase from growers or manufacturers has been extended to cover purchases from those who are merely merchants and not manufacturers.

The reason for the rule seems to be that where the manufacturer or grower sells an article of his own production, not alone is he deemed to have means of knowledge as to the quality and fitness of the article for its intended use, but the buyer relies upon the superior skill and judgment of the manufacturer or grower, and likewise where a dealer in a particular article offers it for sale for a specified purpose, the buyer relies upon the skill and judgment of the seller, and a warranty upon the part of the seller is implied that the article shall be reasonably fit for the purpose for which it is to be applied. The buyer trusts the judgment of the dealer and not his own. This is a radical departure from the law on this subject that has heretofore obtained in this state, and shows the legislative intent to bring our law into harmony, in this regard, with the common law of England, as developed and extended by the courts of that country within the last hundred years, and codified and declared in the Sales of Goods Act of 1893, which is the foundation of our statute.

In my judgment the courts should give full scope and effect to the act of the Legislature, and should not seek to limit its application and confine its effect by those rules and principles laid down by the courts which have heretofore existed, but which the Legislature has expressly changed or abolished.

I am of the opinion that the case comes fairly within the terms of the statute. The defendant's wife purchased from the plaintiff a suit for $110. By implication she makes known that the particular purpose for which the goods were required was personal wear, and she relied upon the skill or judgment of the seller in selecting this suit and offering it for sale, and he impliedly warrants that the suit is reasonably fit for such purpose. This implied warranty was broken when it appeared, after wearing three or four times, that the material of which the suit was made was giving way and becoming disintegrated through latent defects due to improper manufacture, and that the waist became spotted through careless or improper manufacture. Having promptly returned the goods, the defendant could defend on that ground an action to recover the purchase price, and was not required to keep the goods and counterclaim the damage.

The judgment should be affirmed, with costs.

BIJUR, J., concurs.

LEHMAN, J. (dissenting). The plaintiff operates a large retail establishment in the city of New York. It sold to the defendant an embroidered waist and a dress. According to defendant's testimony, the waist at the first washing showed discolorations, and the dress after being worn a few times stretched and tore. The defendant had full opportunity to examine the goods, but the defects were of a nature that could not be discovered by ordinary inspection. Upon this tes-

timony the learned trial justice gave judgment in favor of the defendant, holding, in effect, that the goods were intended for the purpose of wear; that the defendant in purchasing these goods impliedly made known to the plaintiff the purpose for which they were intended; that they were not suitable for that purpose; and that the defendant, on discovering that they were not fit for the purpose, had the right to rescind the contract for breach of an implied warranty.

There is no question but that prior to the passage of the Sales of Goods Act no warranty that the goods were reasonably fit for wear could have been implied by the sale of these goods. It is urged however, that by section 96, subdivision 1, of that act, the common-law principles as laid down by the courts of this state have been abrogated, and that now such a warranty may be implied. As I read that section, it furnishes no basis for this judgment. In order to allow the court to find an implied warranty, two elements are required: First, that the buyer must make known to the seller the particular purpose for which the goods are required; second, that it must appear that the buyer relied upon the seller's skill and judgment. Upon the first element it appears that the defendant required the goods only for the general purpose of wear, and did not expressly or impliedly make known to the seller any purpose for which she required the articles, except as such notice might be implied from the fact that she purchased these articles, which could not be intended for any other use.

In my opinion this proof is sufficient, however, to justify the finding of the trial justice that the first element of an implied warranty was present. In the case of Preist v. Last, Law Reports 2 K. B. (1903) 148, the court in construing a section of the English Sale of Goods Act which is identical in form with the statute which we are considering, stated:

"In a case where the discussion begins with the fact that the description of the goods by which they were sold points to one particular purpose only, it seems to me that the first requirement of the subsection is satisfied, namely, that the particular purpose for which the goods are required should be made known to the seller."

It seems to me that this construction is in accordance with common sense, and should be followed by the courts of this state. I do not, however, agree with the view that there is any proof of the second element required by the statute. If we are to hold that upon every sale by a retail dealer of an article customarily handled by him the purchaser relies upon the skill and judgment of the seller, then we are in my opinion practically wiping out the doctrine of caveat emptor in regard to such transactions. In the absence of a clear expression on the part of the Legislature, I am certainly unwilling to believe that it intended to wipe out a doctrine so well established in our jurisprudence, or to hold that in every case where a retail dealer sells a specified article obviously intended only for a particular use, he impliedly warrants that it is reasonably fit for such use. It seems to me that, even though the seller knows that since the article is by its very description intended only for a particular use, yet unless the buyer shows that he relied on the seller's skill and judgment, by specifically calling

the seller's attention to the particular use for which the article was intended, no such implied warranty arises.

Previous to the passage of the act, a manufacturer was held to impliedly warrant the goods bought from him were reasonably fit for the use for which they must be presumed to have been intended. This implied warranty was, however, confined to latent defects arising in the actual manufacture of the goods. As to such defects the manufacturer was in a better position than the buyer, and the buyer was bound to rely upon the manufacturer's skill to detect defects which, though latent in the finished articles, would not exist if the manufacturer had exercised due care. This implied warranty was, however, confined to latent defects, due to the manufacturer's lack of care, and did not extend to latent defects in the materials purchased by the manufacturer (Hoe v. Sanborn, 21 N. Y. 552, 78 Am. Dec. 163); for it would be unreasonable to suppose that the buyer relied on the manufacturer's skill to discover latent defects which were not due to his own lack of care. This rule, moreover, was upon the same principle, I think, confined to manufacturers and growers. If the seller was only a dealer in the goods, he was not held liable for latent defects in the absence of fraudulent concealment or express warranty. I know of no case which held that a dealer is required to test the goods to see whether, by reason of any latent defects, they are not fit for the purpose for which they are naturally intended.

In this discussion I have entirely left out of consideration those cases where a buyer purchases goods for a particular purpose, leaving to a dealer the selection of the goods fit for that purpose, for in this case it is not disputed that the defendant selected the goods herself, and her only complaint is that they contain latent defects rendering them unfit for the purpose for which they were naturally intended.

As I interpret the statute, it has not changed the common-law rule as declared by the courts of this state by imposing an implied warranty upon an executed sale, except that it enacts that the implied warranty of fitness is not to be confined to a sale by a manufacturer or grower, but is to be implied in any sale where it appears that the buyer relied upon the seller's skill or judgment. The question still remains, What skill or judgment does a buyer rely on, when a sale is made from a retail dealer?

Evidently in the ordinary purchase of goods from a dealer, the buyer cannot rely upon the dealer to discover latent defects due to faulty manufacture or the use of defective materials. A buyer cannot expect a dealer to wash his goods, or to require them to be used, before he puts them on sale in order to detect defects that could be discovered only by washing or wearing. A buyer purchasing from a retail dealer may have a right to expect honesty on his part, but, in the absence of affirmative evidence to show that he relied on special knowledge, skill or judgment on the dealer's part, a buyer cannot reasonably claim that, from the mere fact of a purchase from a dealer, any inference can be drawn that he relied upon the dealer to detect defects not apparent to the buyer, and, in the absence of proof of fraudulent concealment on the part of the dealer, the buyer should not be permitted to rescind a sale. However, though a mere purchase from a retail dealer is in my

opinion insufficient to show that the buyer relied upon the dealer's skill or judgment, where all the circumstances show that the buyer did in fact rely upon such skill and judgment, then the implied warranty arises.   Such circumstances may exist where the dealer holds himself out as having peculiar skill; and, where the buyer calls the dealer's attention to the fact that he is purchasing the article for a particular purpose, the circumstance may be sufficient to show that he relied on the dealer's skill and judgment to furnish him with an article reasonably fit for this purpose.

In the case before us, upon the sale of the waist, I believe that obviously no implied warranty could arise.   The defendant bought the goods apparently without questioning the plaintiff in any way, and it is not shown that the latent defects would be apparent, even to an expert, as long as the waist was unwashed.   In regard to the sale of the dress, the question is closer.

The defects, though the result of manufacture, and not apparent to an ordinary buyer, could have been discovered by an expert examination, and the buyer asked the saleswoman whether the dress would wear well.   Although I admit that the question of whether it appears that the buyer relied on the seller's skill and judgment is a question of fact, and this testimony presents some evidence that the buyer did rely upon the seller's judgment, yet in my opinion it is insufficient to sustain the judgment.   The conversation was held with a saleswoman of the plaintiff, not held out by him as having any personal skill or judgment, and, considering the conversation as a whole, it really, to my mind, presents no feature distinguishing it from the ordinary sale where a buyer obtains from a seller an expression of opinion extolling his wares, and fails to show that the buyer and seller were not dealing at arm's length.   In my opinion this is the real test to be applied to such sales.   If the circumstances show that buyer and seller were not dealing at arm's length, but that the buyer was in a position where he could reasonably rely on the seller's judgment, and not on his own inspection, then the seller, having reason to believe that the buyer relies upon his skill in selecting or manufacturing goods reasonably fit for their purpose, may be held to an implied warranty.

On the other hand, where the sale is an ordinary sale at retail, mere questioning of a salesman and puffing of the wares by him, as ordinarily accompanies such sales, is insufficient to show that the buyer relied upon the seller's skill in selecting manufactured articles free from defects, rendering them unsuitable for the use for, which they are intended.

It seems to me, therefore, that the judgment should be reversed.